[No. 65615-5-I.   Division One.   January 3, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. NICHOLAS LEE MONAGHAN, *Appellant*.

*Jennifer M. Winkler* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Craig D. Chambers* and *Kimberly A. Thulin, Deputies*, for respondent.

¶1 Cox, J. — Generally, "warrantless searches and seizures are per se unreasonable."[1] Consent is among the few " 'jealously and carefully drawn exceptions' to the warrant requirement."[2] To prove a consensual search, the State must show that (1) the consent was voluntary, (2) the

---

[1] *State v. Reichenbach*, 153 Wn.2d 126, 131, 101 P.3d 80 (2004).

[2] *Id.* (internal quotation marks omitted) (quoting *State v. Hendrickson*, 129 Wn.2d 61, 70-71, 917 P.2d 563 (1996)).

person granting consent had authority to consent, and (3) the search did not exceed the scope of the consent.[3]

¶2 Here, the first two of the above requirements are not at issue. As for the third, we conclude that the search of the locked container within the trunk of Nicholas Lee Monaghan's car exceeded the scope of consent he gave police to search the trunk. Because it is undisputed that Monaghan never consented to the search of the locked container, police did not have legal authority under article I, section 7 of the state constitution to search it. Accordingly, the illegal drugs that police seized from the container must be suppressed. We reverse.

¶3 In July 2009, Deputy Matthew High stopped a vehicle for running a stop sign in Whatcom County. Monaghan was at the wheel. There were two passengers in the vehicle, Danielle Fink-Crider and another.

¶4 Deputy High thought that he recognized Fink-Crider and believed there was an outstanding bench warrant for her arrest. He asked Deputy Anthony Paz, who arrived at the scene to assist, to check while he filled out a citation for Monaghan's traffic infraction. Deputy Paz confirmed by computer that there was an outstanding warrant for Fink-Crider's arrest.

¶5 Deputy High then asked Monaghan for the identity of his female passenger. Monaghan said she was his girl friend and her name was "Amber Smith." Knowing this to be untrue, the deputy arrested Monaghan for making a false statement to a law enforcement officer and handcuffed him.

¶6 Deputy High read Monaghan his *Miranda* rights, and Monaghan waived them.[4] Deputy High then asked Monaghan for his consent to search the vehicle for weap-

---

[3] *Id.* (citing *State v. Thompson,* 151 Wn.2d 793, 803, 92 P.3d 228 (2004); *State v. Nedergard,* 51 Wn. App. 304, 308, 753 P.2d 526 (1988)).

[4] Clerk's Papers at 19 (Finding of Fact 4); *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

ons.[5] The deputy advised him that his consent was purely voluntary and that he could withdraw or limit his consent at anytime.[6] Monaghan consented to the search of the passenger compartment of the vehicle.[7]

¶7 Monaghan later consented to Deputy Paz's request to search the trunk of the vehicle.[8] During this search, Deputy Paz found a zippered container in the trunk with a locked safe inside. The deputy opened the safe with a key he located on a key ring in the passenger compartment of the car. Inside the safe, the deputy found methamphetamine and drug paraphernalia.

¶8 The State charged Monaghan with unlawful possession of a controlled substance. Monaghan moved to suppress the evidence obtained in the search of the trunk of his vehicle. He argued, among other things, that the search of the safe exceeded the scope of consent that he gave the deputies. The trial court denied his motion and entered its findings of fact and conclusions of law.

¶9 Based on a stipulated record, the court found Monaghan guilty as charged. The court entered its findings and conclusions and a judgment and sentence consistent with that decision.

¶10 Monaghan appeals.

## CONSENT TO SEARCH

■ ¶11 Monaghan argues that the trial court erred in denying his motion to suppress the evidence obtained from the locked safe. He claims the search violated article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution. We hold

---

[5] Clerk's Papers at 19 (Finding of Fact 4).

[6] *Id.*

[7] *Id.*

[8] *Id.* (Finding of Fact 6).

that the search of the locked container and the seizure of its contents was without authority of law under the state constitution. Thus, the contents must be suppressed. Accordingly, we need not reach the Fourth Amendment claim.

¶12 When a party claims both state and federal constitutional violations, our courts should first review the state constitutional claim.[9]

¶13 Article I, section 7 generally provides greater protection from state action than does the Fourth Amendment.[10] Although similar, " 'the protections guaranteed by article I, section 7 of the state constitution are qualitatively different from those provided by the Fourth Amendment to the United States Constitution.' "[11] "The Fourth Amendment protects only against 'unreasonable searches' by the State, leaving individuals subject to . . . warrantless, but reasonable, searches."[12] Article I, section 7 is unconcerned with the reasonableness of a search but instead requires a warrant before any search, whether reasonable or not.[13] "This creates 'an almost absolute bar to warrantless arrests, searches, and seizures, with only limited exceptions . . . .' "[14] The distinction between article I, section 7 and the Fourth Amendment arises because the word "reasonable" does not appear in any form in the text of article I,

---

[9] *State v. Afana*, 169 Wn.2d 169, 176, 233 P.3d 879 (2010).

[10] *State v. Eisfeldt*, 163 Wn.2d 628, 636, 185 P.3d 580 (2008) (citing *State v. Simpson*, 95 Wn.2d 170, 178, 622 P.2d 1199 (1980)).

[11] *Id.* at 634 (quoting *State v. McKinney*, 148 Wn.2d 20, 26, 60 P.3d 46 (2002)).

[12] *Id.* (quoting U.S. Const. amend. IV ("The right of the people to be secure in their . . . houses . . . against unreasonable searches . . . shall not be violated.")).

[13] *Id.* at 634-35 (quoting Const. art. I, § 7 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law.")).

[14] *State v. Valdez*, 167 Wn.2d 761, 772, 224 P.3d 751 (2009) (alteration in original) (quoting *State v. Ringer*, 100 Wn.2d 686, 690, 674 P.2d 1240 (1983), *overruled in part on other grounds by State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986)).

section 7 as it does in the Fourth Amendment.[15] "Understanding this significant difference between the Fourth Amendment and article I, section 7 is vital to properly analyze the legality of any search in Washington."[16]

■■ ¶14 Our inquiry under article I, section 7 requires a two-part analysis.[17] First, we must determine whether the State has intruded into a person's private affairs.[18] The protections of article I, section 7 are not " 'confined to the subjective privacy expectations of modern citizens,' " unlike the Fourth Amendment and its reasonability determination.[19] Instead, article I, section 7 protects " 'those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.' "[20] If the State has disturbed a privacy interest, the second step in our analysis asks whether the authority of law required by article I, section 7 justifies the intrusion.[21] This requirement is satisfied by a valid warrant, limited to a few jealously guarded exceptions, including consent.[22]

■ ¶15 Where the State relies on consent to conduct a warrantless search, we must address three questions.[23]

---

[15] *Eisfeldt*, 163 Wn.2d at 635 (quoting *State v. Morse*, 156 Wn.2d 1, 9, 123 P.3d 832 (2005)).

[16] *Id.*

[17] *Valdez*, 167 Wn.2d at 772.

[18] *Eisfeldt*, 163 Wn.2d at 636-37 (citing *State v. Boland*, 115 Wn.2d 571, 577, 800 P.2d 1112 (1990)).

[19] *Id.* at 637 (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)).

[20] *Id.* (quoting *Myrick*, 102 Wn.2d at 511).

[21] *Valdez*, 167 Wn.2d at 772.

[22] *Id.*; *State v. Hendrickson*, 129 Wn.2d 61, 71, 917 P.2d 563 (1996) ("The exceptions to the requirement of a warrant have fallen into several broad categories: consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and *Terry* investigative stops." (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968))).

[23] *Thompson*, 151 Wn.2d at 803.

First, was the consent freely and voluntarily given?[24] Second, was the consent granted by a person with authority to consent?[25] Third, was the search conducted within the scope of the consent given?[26]

¶16 The State bears the burden of showing that a warrantless search fits an exception to the warrant requirement.[27] The exclusionary rule requires the suppression of evidence gathered through unconstitutional means.[28] "When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed."[29]

¶17 A superior court's conclusion that a warrantless search of a vehicle did not violate the constitution is reviewed de novo on appeal.[30] Where, as here, the court's findings of fact following the suppression hearing are unchallenged, they are verities on appeal.[31]

¶18 Here, it is undisputed that Monaghan's consent to search the passenger compartment and the trunk of his vehicle was freely and voluntarily given. It is also undisputed that he neither withdrew his consent to the searches nor limited them in any way, despite knowing that he could. And there is no dispute that he had the authority to grant consent to the searches. Thus, the sole question before us is whether the search of the locked safe exceeded the scope of the consent that Monaghan gave Deputy Paz to search the trunk of his car.

---

[24] *Reichenbach*, 153 Wn.2d at 131.

[25] *Id.*

[26] *Id.*

[27] *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984).

[28] *Eisfeldt*, 163 Wn.2d at 639 (quoting *State v. Duncan*, 146 Wn.2d 166, 176, 43 P.3d 513 (2002)).

[29] *State v. Ladson*, 138 Wn.2d 343, 359, 979 P.2d 833 (1999) (citing *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986)).

[30] *State v. Moore*, 161 Wn.2d 880, 885, 169 P.3d 469 (2007).

[31] *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

¶19 The unchallenged findings of fact, which are verities on appeal, state:

5. Deputy High commenced the search of the car's interior and turned it over to Deputy Paz. Deputy High then started to complete issuing defendant's citation. Defendant was taken out of handcuffs and stood at the rear of the vehicle with Deputy Anders. Deputy Paz released the trunk latch on the trunk of defendant's vehicle. The hatch popped up a couple of inches, but the interior of the trunk was not visible.

6. Defendant then spoke to Deputy High and said I thought you were only going to search the passenger compartment. Deputy Paz stopped the hatch from rising any higher. Deputy Paz then asked defendant directly if he could search the vehicle's trunk. Defendant hesitated for a few seconds and then said "Yeah, go ahead."

7. Deputy Paz located a soft pack in the trunk of the vehicle and discovered a desk sized dictionary/safe inside. He obtained the keys from the driver's area of the Acura and found a key on the ring that fit the lock of the dictionary/safe. He opened the dictionary/safe and found three methamphetamine pipes, a baggy with white crystalline substance inside and other drug paraphernalia.

8. Defendant stood at the driver's door of Deputy High's vehicle talking to Ms. Fink-Crider as Deputy Paz searched the trunk and its contents. Parked directly behind the Accura [sic], the headlights of Deputy High's vehicle illuminated the scene. Defendant was within fifteen feet of the trunk of his car and the search. He did not at any time withdraw his consent to the search or limit it in any way.[32]

■■ ■■ ¶20 As the supreme court recently stated in *State v. Valdez*,[33] the first question in an inquiry under article I, section 7 is whether the state action constitutes a disturbance of one's private affairs. There is no dispute that the search of the trunk, as described in the above findings, constituted such a disturbance. Likewise, the search of the

---

[32] Clerk's Papers at 19-20.

[33] 167 Wn.2d 761, 772, 224 P.3d 751 (2009).

locked container, which is described in the above findings, also disturbed the private affairs of Monaghan.

¶21 As the trial court in this case correctly stated at the suppression hearing, the parties agreed that there was no request by either deputy to search the inside of the locked container.[34] This is significant in Washington. In *State v. Stroud*,[35] the supreme court gave "locking articles within a container" of a vehicle "additional privacy expectations" under article I, section 7. This is in marked contrast to the federal standard under the Fourth Amendment, which permits a warrantless search of both locked and unlocked containers.[36]

¶22 Furthermore, this additional privacy expectation of the Washington Constitution has withstood the test of time. For example, in *State v. Vrieling*,[37] the supreme court stated that "officers may not unlock and search a locked container or locked glove compartment without obtaining a warrant."[38] We note that the recent overruling of *Stroud* on other grounds did nothing to diminish the additional privacy expectation in locked containers within vehicles that our courts have consistently recognized.[39]

¶23 We conclude that Monaghan had an additional privacy expectation in the locked container discovered in the search of the trunk in this case. This search and seizure was without a warrant and without Monaghan's consent. Thus, it was without the authority of law that the Washington Constitution requires.

---

[34] Report of Proceedings at 84.

[35] 106 Wn.2d 144, 152, 720 P.2d 436 (1986), *overruled on other grounds by Valdez*, 167 Wn.2d at 777.

[36] *See* Charles W. Johnson, *Survey of Washington Search and Seizure Law: 2005 Update*, 28 SEATTLE U. L. REV. 467, 677 (2005) (citing 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.1(c) at 519-21 (4th ed. 2004)).

[37] 144 Wn.2d 489, 28 P.3d 762 (2001).

[38] *Id.* at 492.

[39] *See Valdez*, 167 Wn.2d at 777.

¶24 Monaghan relies on both *State v. Cole*[40] and *State v. Cuzick*[41] to support his state constitutional claim. In our view, reliance on those cases is misplaced. Both *Cole* and *Cuzick* were decided exclusively under the Fourth Amendment. Neither case cited article I, section 7 of the Washington Constitution. As we explained earlier in this opinion, there are important distinctions between article I, section 7 and the Fourth Amendment. Thus, reliance on Fourth Amendment analysis for this state constitutional claim is inappropriate.

¶25 The State relies on this court's decision in *State v. Mueller*[42] to justify the search of the locked container within the trunk, as the trial court did below. At first blush, that case appears to be similar to this one, but it is distinguishable.

¶26 There, a state trooper stopped a vehicle driven by Darrell Mueller on suspicion that he was driving while intoxicated.[43] During the stop, the trooper asked Mueller whether he would consent to a search of his car.[44]

¶27 At the suppression hearing that followed Mueller's arrest and prosecution for violation of the Uniform Controlled Substances Act, chapter 69.50 RCW, the trial court found that he had given a general, unqualified consent to search his vehicle for guns and drugs.[45] He was cooperative and did not request the trooper to stop the search at any point.[46]

---

[40] 31 Wn. App. 501, 643 P.2d 675 (1982).

[41] 21 Wn. App. 501, 585 P.2d 485 (1978).

[42] 63 Wn. App. 720, 821 P.2d 1267, *review denied,* 119 Wn.2d 1012 (1992).

[43] *Id.* at 721.

[44] *Id.*

[45] *Id.*

[46] *Id.*

¶28 The trooper found a gym bag in the car during the search.[47] On disputed testimony, the court determined that Mueller owned the bag.[48] The trooper unzipped the bag and searched the contents.[49] They included four bindles of illegal drugs, over $1,000 cash, and other items.[50]

¶29 Mueller appealed his conviction.

¶30 This court, relying on *State v. Jensen*[51] and *Florida v. Jimeno*,[52] concluded that the general and unqualified consent that Mueller gave to search the vehicle for particular items authorized the search of the gym bag.[53] Significantly, these cases were Fourth Amendment cases. And neither involved a locked container, as in this case.

¶31 As we explained earlier in this opinion, article I, section 7 analysis is distinct from the Fourth Amendment. The two-step analysis under article I, section 7 makes clear that our state constitution focuses on privacy expectations of our citizens. In doing so, our courts have afforded "additional privacy expectations" to locked containers.

¶32 In short, *Mueller* is both factually and legally distinct from the case that is now before us. Accordingly, it cannot properly support denial of the motion to suppress.

¶33 The State argues, in the alternative, that Monaghan impliedly consented to the search of the locked safe. In doing so, the State relies on *State v. Bustamante-Davila*.[54]

¶34 There, the primary issue was whether the failure to inform the defendant of his right to refuse entry to his home

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] 44 Wn. App. 485, 723 P.2d 443 (1986).

[52] 500 U.S. 248, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991).

[53] *Mueller*, 63 Wn. App. at 722-24.

[54] 138 Wn.2d 964, 983 P.2d 590 (1999).

by Immigration and Naturalization Service (INS) agents who were accompanied by police invalidated his consent permitting entry.[55] In discussing whether there was consent, the court stated that there was at least implied consent to entry of the police who accompanied the INS agents that the defendant saw outside his window before opening the door.[56] In discussing this implied consent, the court noted that there was an unchallenged finding of fact that the defendant allowed the INS agent to enter.[57] There was also testimony by the INS agent that the police officers with him were within the defendant's view when he came to the window.[58] According to the supreme court, when the defendant stepped back from the open door and did not object to the police officers entering with the INS agent, he impliedly gave consent to their entry.[59]

¶35 The facts here are different. It is undisputed that Monahan never gave permission to search the locked container, as the trial court correctly stated. This record does not support the argument that Monaghan impliedly consented to the search of the locked safe when he consented to the search of the trunk of his vehicle.

¶36 The State's argument appears to rest on the assumption that Monaghan saw Deputy Paz open the locked safe, just as the defendant in *Bustamante-Davila* saw the police enter with the INS agent. But the trial court made no such finding. Finding of fact 8 merely describes where Monaghan stood during the search of the trunk and its contents.[60] There is nothing in this or any other finding

---

[55] *Id.* at 980-81.

[56] *Id.* at 981.

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] Clerk's Papers at 20 ("Defendant stood at the driver's door of Deputy High's vehicle talking to Ms. Fink-Crider as Deputy Paz searched the trunk and its contents. Parked directly behind the Accura [sic], the headlights of Deputy High's

that supports the State's contention that Monaghan saw Deputy Paz open the locked safe. Finally, Monaghan's testimony during the hearing indicated that his attention could just as easily have been directed to talking with Fink-Crider, who was in the police vehicle to the rear of Monaghan's vehicle during the search. In short, the State fails in its burden to show even implied consent to the search of the locked safe in the trunk.

¶37 The search and seizure of the contents of the safe lacked the authority of law required by the Washington Constitution. The contents must be suppressed.

¶38 Because of our resolution of the challenge to the search and seizure on state constitutional grounds, we need not address Monaghan's Fourth Amendment challenge.

¶39 We reverse the judgment and sentence.

SCHINDLER and LAU, JJ., concur.

---

vehicle illuminated the scene. Defendant was within fifteen feet of the trunk of his car and the search. He did not at any time withdraw his consent to the search or limit it in any way.").