# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47563-4-II |
| Respondent, | |
| v. | |
| JASON PAUL SCHWARTZ, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Jason Paul Schwartz challenges his conviction following a bench trial for unlawful possession of a controlled substance, methamphetamine.  He argues that the trial court erred when it denied his motion to suppress the evidence found during a warrantless search of his vehicle under the plain view exception to the warrant requirement.  Schwartz (1) challenges findings of fact nos. 9 and 10 and conclusion of law no. 5, (2) argues that the plain view exception does not apply because the arresting trooper had to "manipulate" the item that she found in order to recognize it as contraband, and (3) argues that the plain view exception does not apply because the trooper exceeded the scope of his permission to enter his vehicle to retrieve a cell phone when she shone a flashlight on other items in the car.  In a supplemental brief, Schwartz also argues that (1) the trial court erred when it imposed discretionary legal financial obligations (LFOs) without making an individualized inquiry into his ability to pay and (2) this court should not impose appellate costs.

Holding that there was substantial evidence to support the relevant portions of the challenged findings, that Schwartz's other arguments related to his conviction have no merit, and that he has waived his LFO issue, we affirm Schwartz's conviction and sentence. We also decline to impose costs on appeal.

FACTS

I. BACKGROUND

At 5:12 p.m. on January 29, 2015, Washington State Trooper Tara Hicks stopped Schwartz for a faulty break light. Trooper Hicks arrested Schwartz after determining that he was driving on a suspended license.

After his arrest, Trooper Hicks asked Schwartz if someone could pick up his vehicle so it would not need to be towed. Schwartz asked Trooper Hicks to retrieve his cell phone from his vehicle so he could access some contact information. He told her that the phone was in "the front" of the vehicle. Report of Proceedings (RP) (Apr. 1, 2015) at 17.

When she approached the driver's side, Trooper Hicks looked into the vehicle using her flashlight. In the driver's seat, she saw a green plastic item that looked like a straw with a white powdery substance on its edges. She immediately recognized the straw "[a]s a device used to ingest drugs, methamphetamine," and she recognized the white substance as methamphetamine. RP (Apr. 1, 2015) at 13.

Trooper Hicks then picked up the straw "[j]ust to confirm" what she had seen and observed more of the white substance inside the straw. RP (Apr. 1, 2015) at 22-23. She then put the straw back on the driver's seat, called over another deputy to look at the straw, and obtained a search warrant for the vehicle. Lab tests later confirmed that the white substance was methamphetamine.

2

No. 47563-4-II

II. PROCEDURE

The State charged Schwartz with unlawful possession of a controlled substance, methamphetamine.[1] Schwartz moved to suppress the evidence, arguing, inter alia, that it was not a lawful search under the plain view doctrine because Trooper Hicks had "manipulated" the straw so she could ascertain its incriminating nature.[2] Clerk's Papers (CP) at 20; RP (Apr. 1, 2015) at 30.

At the suppression hearing, Trooper Hicks testified as described above. Although she testified that she picked up the straw "[j]ust to confirm" what she had seen, she also testified that she saw the white substance on the straw before picking it up. RP (Apr. 1, 2015) at 22-23.

The trial court denied Schwartz's suppression motion and entered written findings of fact that stated, in part:

> 9. Trooper Hicks approached the vehicle and immediately upon looking in the driver's side, Trooper Hicks saw a hard plastic straw, with a white powdery substance on the outside and inside of the straw.
>
> 10. Trooper Hicks immediately recognized the straw as drug paraphernalia and what she believed was methamphetamine based on her training and experience before Trooper Hicks touched the object.

CP at 28.

---

[1] RCW 69.50.4013; 69.50.206(d)(2).

[2] Schwartz also argued that the initial stop was pretextual, but he later conceded this argument had no merit and the trial court denied the motion to suppress on this ground.

The trial court also entered the following conclusion of law:

5.      Trooper Hicks immediately recognized the straw and white powdery substance as drug paraphernalia and a controlled substance without further manipulation.

CP at 29.

Schwartz waived his right to a jury trial, and the case proceeded to a bench trial. The trial court found Schwartz guilty as charged.

During sentencing, after the State requested LFOs, the following discussion occurred:

THE COURT:  So your client is working,[3] so he does have the ability to pay financial obligations.
[DEFENSE COUNSEL]:  He does, your Honor.

RP (May 6, 2015) at 17.

The trial court imposed a $500 crime victim assessment, a $200 filing fee, $1,200 in court-appointed attorney fees, a $1,000 VUCSA fine, a $100 DNA collection fee, and a $100 crime lab fee; for a total of $3,100. The trial court sentenced Schwartz to 30 days, with credit for 1 day served, allowed him to serve his sentence on electronic home monitoring (EMH), and ordered that he begin paying $30 a month on his LFOs starting 60 days from the sentencing date.

Schwartz appeals his conviction and sentence.

---

[3] During the sentencing hearing, defense counsel informed the trial court that Schwartz was "currently working doing construction as well as hauling, things of that nature." RP (May 6, 2015) at 16.

ANALYSIS

Schwartz argues that the trial court erred when it denied his suppression motion and challenges the imposition of discretionary LFOs. He also argues that this court should not impose appellate costs.

I. DENIAL OF SUPPRESSION MOTION

A. LEGAL PRINCIPLES

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution prohibit warrantless searches and seizures unless one of the narrow exceptions to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). The State bears the burden of demonstrating that a warrantless search or seizure falls within an exception to the warrant requirement. *Garvin*, 166 Wn.2d at 250. The plain view exception to the warrant requirement allows officers to seize evidence without a warrant if they have made a justifiable intrusion into a protected area and inadvertently sighted the contraband in plain view. *State v. Gibson*, 152 Wn. App. 945, 954, 219 P.3d 964 (2009).

When reviewing the denial of a suppression motion, we determine whether substantial evidence supports the trial court's findings of fact and whether the findings support the conclusions of law. *Garvin*, 166 Wn.2d at 249. We review de novo the trial court's conclusions of law. *Garvin*, 166 Wn.2d at 249.

B. CHALLENGES TO FINDINGS OF FACT

We first address Schwartz's challenges to the trial court's findings of fact nos. 9 and 10 and conclusion of law no. 5.

As noted above, the trial court's findings of fact 9 and 10 stated:

> 9. Trooper Hicks approached the vehicle and *immediately upon looking in the driver's side, Trooper Hicks saw a hard plastic straw, with a white powdery substance on the outside and inside of the straw.*
>
> 10. *Trooper Hicks immediately recognized the straw as drug paraphernalia* and what she believed was methamphetamine based on her training and experience before Trooper Hicks touched the object.

CP at 28 (emphasis added).

And conclusion of law 5, which Schwartz argues is more properly characterized as a finding of fact, stated:

> *Trooper Hicks immediately recognized the straw and white powdery substance as drug paraphernalia and a controlled substance without further manipulation.*

CP at 29 (emphasis added). We agree that this conclusion is more properly considered as a finding of fact and treat it as a finding in this analysis. *State v. Marcum*, 24 Wn. App. 441, 445, 601 P.2d 975 (1979) (statement of fact contained within a trial court's conclusions of law is treated as a finding of fact).

Schwartz argues that the italicized portions of these findings are not supported by the evidence because (1) the trooper first illuminated the item with her flashlight, (2) she could not see what was inside the straw until she picked it up and looked inside it, and (3) "Trooper Hicks only suspected or 'believed' the item was drug paraphernalia with drug residue on it until she picked up the item, looked inside and confirmed her suspicion." Br. of Appellant at 9.

Schwartz is correct that the trooper did not see the straw until she illuminated the area with her flashlight.[4] But Trooper Hicks testified that once the area was lit, she immediately saw the

---

[4] We discuss below whether illuminating the area with a flashlight affected whether this observation fell under the plain view doctrine.

straw in the driver's seat, observed the white residue on the straw's ends, recognized the white powder as methamphetamine, and recognized the straw as a form of drug paraphernalia. This testimony supports the trial court's finding that Trooper Hicks immediately recognized the straw and white powder as contraband without first manipulating the straw.

Schwartz is correct, however, that Trooper Hicks did not observe the white powder *inside* the straw until after she had picked up the straw and looked inside it. Thus, the portion of finding of fact 9 stating that the trooper immediately observed the white substance "inside" the straw is not supported by the evidence. CP at 28. But this error is harmless because the trial court did not err in finding that Trooper Hicks immediately recognized the straw and white powder on the *outside* of the straw as contraband without further manipulation.

C. No Manipulation

Citing *State v. Murray*, 84 Wn.2d 527, 527 P.2d 1303 (1974), Schwartz also argues that the plain view exception to the warrant requirement does not apply because, rather than immediately recognize the contraband, Trooper Hicks had to "manipulate" the suspected material by picking up the straw to determine whether it contained drugs. We disagree.

In *Murray*, the officers obtained permission to search an apartment they suspected contained stolen office and video equipment. *Murray*, 84 Wn.2d at 529-31. While in the apartment, the officers saw a portable television set. *Murray*, 84 Wn.2d at 529. One of the officers "tipped" the television to see its serial numbers. *Murray*, 84 Wn.2d at 529. After checking the serial number, the officers determined that the television was stolen, obtained a warrant, and seized the television. *Murray*, 84 Wn.2d at 529. At the suppression hearing, the officers admitted that

7

they were not looking for a stolen television when they entered the apartment. *Murray*, 84 Wn.2d at 531.

Our Supreme Court held that the officers' initial intrusion into the apartment was justified because they had consent. *Murray*, 84 Wn.2d at 534. But it further held that the officers' search was limited to the items they were looking for, which did not include the television, and that the television was "not subject to seizure under the plain view doctrine since the officers did not have *immediate* apparent knowledge that they had incriminating evidence before them." *Murray*, 84 Wn.2d at 534 (emphasis added). The court noted that the officers did not know that the television was incriminating until they had tilted the television to obtain the serial number, which was not in plain view, and then checked the serial number. *Murray*, 84 Wn.2d at 535.

Here, in contrast, Trooper Hicks testified that she recognized the straw as drug paraphernalia and white powder on the outside of the straw as methamphetamine when she first saw the straw. *See* RP (Apr. 1, 2015) at 13. She manipulated the straw "[j]ust to confirm" what she had already seen, and the straw and residue were in plain view. Accordingly, this argument fails. RP (Apr. 1, 2015) at 22-23

D. USE OF FLASHLIGHT

"[T]he 'plain view' doctrine does not justify the initial intrusion into the protected area." *Gibson*, 152 Wn. App. at 954 (quoting *State v. Kennedy*, 107 Wn.2d 1, 9, 726 P.2d 445 (1986)). Instead, it justifies a seizure only when the officer has lawful access to the seized contraband under

some prior Fourth Amendment justification.[5]  *Gibson*, 152 Wn. App. at 954.  Citing *State v. Monaghan*, 165 Wn. App. 782, 266 P.3d 222 (2012), Schwartz appears to challenge the lawfulness of the initial intrusion, arguing that Trooper Hicks did not have lawful access to the seized contraband because she exceeded the scope of his permission[6] to enter the vehicle when she used her flashlight to look for items other than his cell phone in the vehicle.

Schwartz did not present this argument in his motion to suppress or at the suppression hearing; he argued only that it was not a lawful search under the plain view doctrine because Trooper Hicks had "manipulated" the straw to ascertain its incriminating nature.  CP at 20; RP (Apr. 1, 2015) at 30.  But even presuming that Schwartz preserved this argument, it fails because the officer's initial entry into the vehicle was lawful.

First, *Monaghan* is easily distinguished.  In *Monaghan*, Monaghan gave deputies permission to search the passenger compartment and trunk of the vehicle he had been driving. *Monaghan*, 165 Wn. App. at 785-86.  But the deputies also opened and searched a locked safe they found in the trunk.  *Monaghan*, 165 Wn. App. at 786.  Division One of this court held that the search of the safe was unlawful because Monaghan had not given the deputies permission to search the locked safe and Monaghan had "an additional privacy expectation in the locked container." *Monaghan*, 165 Wn. App. at 791.  Here, there was no additional locked container, so *Monaghan* is not instructive.

---

[5] The officer must also have probable cause to suspect that the item is connected with criminal activity.  *Gibson*, 152 Wn. App. at 954.  Schwartz does not argue that Trooper Hicks lacked probable cause to suspect that the straw and residue were connected with criminal activity.

[6] Consent is a recognized exception to the warrant requirement.  *State v. Hendrickson*, 129 Wn.2d 61, 71, 917 P.2d 563 (1996).

Second, Schwartz does not show that Trooper Hicks's use of the flashlight was improper. Trooper Hicks entered Schwartz's vehicle at his request to retrieve his phone after 5:00 p.m. in late January 2015. It was not unreasonable for her to use a flashlight to attempt to locate Schwartz's cell phone. And there is substantial authority holding that use of a flashlight does not transform an otherwise lawful observation into an unlawful search. *See e.g. State v. Cagle*, 5 Wn. App. 644, 646, 490 P.2d 123 (1971) (officer's use of a flashlight to see contraband inside vehicle from lawful vantage point did not transform an otherwise lawful search under the plain view doctrine into an unlawful search) (quoting *Marshall v. United States*, 422 F.2d 185, 189 (5th Cir. 1970)); *see also State v. Rose*, 128 Wn.2d 388, 398-399, 909 P.2d 280 (1996) (holding that use of a flashlight to see items left in plain sight, visible through an unobstructed window did not transform an observation that would fall within the open view doctrine during the daylight into an impermissible search simply because it became dark and that use of a flashlight is not an intrusive method of viewing that would undermine the open view doctrine); *State v. O'Neill*, 148 Wn.2d 564, 578, 62 P.3d 489 (2003) ("The use of a flashlight to illuminate at night what is plainly visible during the day is not an unconstitutional intrusion into a citizen's privacy interests."). Accordingly, Trooper Hick's entry into the vehicle and use of the flashlight was within the scope of Schwartz's consent and this argument fails.

## II. DISCRETIONARY LFOS AND APPELLATE COSTS

Schwartz next argues, for the first time on appeal, that the trial court erred by imposing discretionary LFOs without first conducting an individualized inquiry into his ability to pay as required under RCW 10.01.160(3), *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), and the

federal and state equal protection clauses.[7] Even presuming that this issue is otherwise properly before us, defense counsel's affirmative agreement that Schwartz had the ability to pay LFOs waived this argument, and we decline to address it further. *State v. Hunter*, 116 Wn. App. 300, 301-02, 65 P.3d 371 (2003) (waiver can be found where the alleged error involves an affirmative agreement to facts), *aff'd, State v. Ross*, 152 Wn.2d 220, 95 P.3d 1225 (2004).

Finally, Schwartz asks that we decline to award appellate costs to the State in light of *State v. Sinclair*,[8] arguing he lacks the ability to pay. RCW 10.73.160(1) vests us with discretion to award appellate costs. Under RAP 14.2, that discretion may be exercised in a decision terminating review.

There are facts that weigh both for and against imposing appellate costs in this case. The record shows that Schwartz was employed at the time of his sentence, that his sentence was short and was possibly served on EMH rather than in physical custody, and that his counsel confirmed at the sentencing hearing that Schwartz had the ability to pay his LFOs. In contrast, the trial court entered an order of indigency for this appeal,[9] there is nothing before us suggesting that Schwartz's indigency status has changed,[10] and since the sentencing hearing Schwartz has incurred $3,100 in additional debts. Given Schwartz's continuing indigency and the additional debt already imposed, we exercise our discretion and hold that an award of appellate costs to the State is not appropriate.

---

[7] U.S. CONST. amend. XIV; WASH. CONST. art I, § 12.

[8] 192 Wn. App. 380, 367 P.3d 612 (2016), *review denied*, 192 Wn. App. 380.

[9] CP at 53-54.

[10] We presume a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f).

No. 47563-4-II

CONCLUSION

Because there was substantial evidence to support the relevant portions of the challenged findings, Schwartz's other arguments regarding his conviction have no merit, and Schwartz has waived his LFO argument, we affirm Schwartz's conviction and sentence. But we decline to impose costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

LEE, J.

12