# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58172-8-II |
| Respondent, | |
| v. | |
| JUAN MANUEL OTERO TORRES, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Juan Otero Torres appeals his convictions for assault in the second degree and unlawful possession of a firearm.[1]  He argues the trial court erred in denying his motion to suppress the shotgun found in his truck because it was the product of an unlawful search and seizure.  He argues that he received ineffective assistance of counsel because his counsel failed to adequately cross-examine, failed to object to a portion of the 911 call recording, and failed to review photos with him.  He also argues the victim penalty assessment (CVPA) should be stricken from his judgment and sentence.

We affirm Otero Torres's convictions.  However, we reverse and remand with instructions to strike the CVPA.

---

[1] The jury found Otero Torres guilty of assault in the second degree by assault with a deadly weapon.  However, he was found not guilty of assault by strangulation and was convicted on the lesser included offense of assault in the fourth degree.  He was also convicted of another count of assault in the fourth degree, however both convictions for assault in the fourth degree were vacated at sentencing to avoid double jeopardy.

FACTS

I.    BACKGROUND

In March 2022, Jessica Mackey and Otero Torres[2] began dating.  Mackey stated that Otero Torres carried a shotgun with him all the time.  In September 2022, Mackey stated their relationship was "strained" and that Otero Torres was "paranoid" and would monitor Mackey's phone calls because he was concerned about who she was hanging out with.  3 Rep. of Proc. (RP) at 335-37.

On September 14, Mackey completed her last day at her job and met Otero Torres at a bar for drinks.  Mackey and Otero Torres had "a few rounds" of drinks.  3 RP at 339. Then, they left to go to a liquor store to buy more alcohol.  Mackey and Otero Torres returned to her house and she made him a drink.  She stated Otero Torres was upset and "ranting and raving" about not trusting her or other people.  3 RP at 345.  Mackey stated that Otero Torres, unprovoked, knocked her off the stool she was sitting on, sat on her chest, and squeezed her neck with both hands tight enough that she could not speak.  She stated this lasted for less than one minute.  Otero Torres went outside for a cigarette, came back in, and they talked, but he became upset again.  She stated that Otero Torres lunged toward her, bent her back over the kitchen counter with his hands around her neck, and the corner of the counter dug into her back.  She had difficulty breathing and started to feel dizzy and lightheaded.  After he stopped, she went to the living room, and they continued arguing.

Mackey stated that Otero Torres grabbed his shotgun and put one hand on her neck and the shotgun under her chin.  This lasted for less than one minute, and then Otero Torres told Mackey to "shut [her] dog up or [he was] going to shoot [the dog]" because she was panting too loudly.  3

_____

[2] Otero Torres's name also appears in the record as Juan Otero-Torres.

RP at 3557. Mackey then picked up her dog, Daisy Mae, and held her in her arms. She sat down in the recliner still holding Daisy Mae, dialed 911, and placed the phone in her bra. Mackey stated Otero Torres pushed back on the recliner until it tipped over, and she and Daisy Mae ended up on their backs on the upended recliner. Mackey then went and placed Daisy Mae in the back bedroom.

At the beginning of the 911 call recording, Otero Torres can be heard yelling and arguing with Mackey. Otero Torres stated, "You gonna call me a liar again?" and Mackey responded, "No, let her go." Ex. 32 (911 audio recording), at 2 min., 13 sec. to 2 min., 16 sec. Otero Torres continued yelling at Mackey. Otero Torres said, "[D]on't walk away from me." Ex. 32 (911 audio recording), at 18 min., 47 sec. to 18 min., 48 sec. Mackey stated that she needed to go use the restroom and Otero Torres responded, "You're gonna piss me off and I'm gonna come in there." Ex. 32 (911 audio recording), at 18 min., 50 sec. to 18 min., 54 sec.

Over halfway into the recording, Mackey whispered "Hi" and the 911 operator responded, "Can you hear me? Has there been anything physical tonight?" Ex. 32 (911 audio recording), at 19 min., 45 sec. to 19 min., 52 sec. Mackey whispered, "Yes." Ex. 32 (911 audio recording), at 19 min., 54 sec. Mackey's line went silent, and the 911 operator called back. Mackey picked up, and the 911 operator asked if there were any weapons in the house. Mackey responded, "No" but subsequently said she was not separated from Otero Torres and was not free to talk. Ex. 32 (911 audio recording), at 22 min., 24 sec. to 22 min., 25 sec.; 23 min., 18 sec. to 23 min., 20 sec. Mackey could be heard speaking to someone else as the 911 operator asked her to keep the line open.

The 911 operator again asked Mackey if there were any weapons in the house, and Mackey responded that Otero Torres was leaving. The 911 operator then said, "[D]id you say yes or no to weapons in the house?" Ex. 32 (911 audio recording), at 24 min., 28 sec. to 24 min., 31 sec. Mackey responded "Yeah, but I'm pretty sure he took it." Ex. 32 (911 audio recording), at 24

3

min., 33 sec. to 24 min., 35 sec.  Mackey stated that Otero Torres left in his gray Dodge truck and that he had left his phone there.  Mackey also stated that she thought the firearm he took was a shotgun and that the gun case was still there, and it was empty.  Mackey told the operator she knew the shotgun was loaded because "[Otero Torres] put it in [her] mouth earlier."  Ex. 32 (911 audio recording), at 29 min., 29 sec. to 29 min., 30 sec.  Mackey said she was scared and asked if she should turn off all her lights.

Officer Sarah Cartwright responded to Mackey's home.  Cartwright took photographs of Mackey's chin, neck, wrists, forearms, and hands as well as a photograph of the gun case in the living room.

## II.    DASHCAM RECORDING

After leaving Mackey's house, Otero Torres was pulled over and taken into custody.  As Otero Torres was being taken into custody, Officer Matthew Leitgeb looked into the driver's side window with a flashlight and indicated he saw a shotgun inside the truck.  After Leitgeb advised Otero Torres of his *Miranda*[3] rights, Otero Torres indicated he understood his rights.  Leitgeb asked when the shotgun came out in his dispute with Mackey.  Otero Torres told him the shotgun had been sitting in his truck for the last three months.  Leitgeb gave Otero Torres *Ferrier*[4] warnings, instructing Otero Torres he could refuse the search, limit the scope of the search, or stop it at any time.  Otero Torres asked a follow-up question.[5]  Leitgeb told Otero Torres that if he refused the search, he would apply for a warrant to search the vehicle.  Otero-Torres asked if

---

[3] *Miranda v. Arizona*, 384 U.S. 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] *State v. Ferrier*, 136 Wn.2 103, 960 P.2d 927 (1998).

[5] The audio recorded in the dashcam footage is unclear at times, so the exact question Otero Torres asked Leitgeb cannot be heard.  However, it is clear from the Leitgeb's response to Otero Torres that he was answering a question asked by Otero Torres.

Leitgeb could at least turn the truck off because it was wasting gas. Leitgeb testified that Otero Torres consented to the search, and Leitgeb retrieved the shotgun from the truck.

III.     TRIAL

Prior to trial, the court denied the State's motion to allow Mackey to testify about prior incidents of assault she had experienced from Otero Torres. The court also denied Otero Torres's motion to suppress evidence of the shotgun because it found Otero Torres voluntarily consented to the search of his truck.

At trial, Leitgeb testified that he advised Otero Torres of his *Miranda* warnings and that Otero Torres told him there was a loaded shotgun in his truck. Leitgeb also testified that Otero Torres consented to the removal of the shotgun from his truck. Leitgeb stated that Otero Torres appeared intoxicated and had slurred speech, but he followed commands and answered questions. Leitgeb also testified that he stood outside the truck and took photographs of the portion of the shotgun that was visible inside.

The recording of the 911 call was played for the jury. Cartwright testified that when she responded to Mackey's home, she observed that Mackey had a red mark under her chin and on her neck, as well as a raised mark on her forearm. Mackey testified regarding the set of photos Cartwright took after the incident. Mackey also testified regarding a second set of photos that she took of herself approximately 24-48 hours after the incident.

The jury found Otero Torres guilty of assault in the second degree while armed with a firearm, two counts of assault in the fourth degree, and unlawful possession of a firearm in the first degree. The jury also found that Otero Torres and Mackey were intimate partners.

IV.    SENTENCING

At sentencing, Otero Torres moved for a new trial and to have new counsel appointed. Oterro Torres's counsel stated:

> [The motion] would be based on a few things from trial, and several of those would be about my failures to object to . . . the admissibility of certain evidence, which would make it fairly problematic to present most of these arguments as they'd be me asking the Court to finding error that I potentially argued, that I created error and argued for it myself.
> They're in relation to, I think, two major issues.  One is the admission of some statements related to 404(b) surrounding a previous or an allegation of a previous assault and a shotgun being put in [Mackey's] mouth on a previous occasion which was discussed at the outset that we were not going to go into but then became part of the 911 call which we played initially and didn't hear very clearly, and then was played with a transcript related to it.
> . . . .
> So what [Otero Torres] [is] asking the Court to find is, I guess, a combination that this would be receipt of evidence not allowed by the Court and/or probably irregularity of proceedings or something that in which [Otero Torres] was prevented from having a fair trial.

RP (May 5, 2023) at 4-5.

Otero Torres's counsel stated that the second issue related to his failure to review with Otero Torres the second set of photos Mackey took of her injuries.  Counsel stated, "I didn't realize it was a separate set of actual photographs until [Mackey] was on the stand saying she took another set."  RP (May 5, 2023) at 6.

The trial court denied the motion for a new trial and sentenced Otero Torres to 108 months of total confinement and 18 months of community custody.  The court also ordered him to have no contact with Mackey for 10 years.  The court found Otero Torres indigent and imposed a $500 CVPA.

Otero Torres appeals.

ANALYSIS

I.    MOTION TO SUPPRESS

Otero Torres argues the trial court erred in denying his motion to suppress the shotgun because it was obtained as the result of an unlawful search and seizure. Otero Torres assigns error to two of the trial court's factual findings. First, he assigns error to the trial court's finding that officers remained outside Otero Torres's truck when taking photos of the shotgun that was inside of the truck.[6] Second, Otero Torres assigns error to the court's finding that the officer did not threaten him to get his consent to search the truck. He further assigns error to the court's legal conclusion that Otero Torres freely and voluntarily consented to a warrantless search and that there was no evidence his consent was coerced or involuntary. Otero Torres argues that the State presented no evidence on Otero Torres's degree of intelligence or education, and therefore, this should be held against the State.

A.    Standard of Review

We review a trial court's denial of a motion to suppress to determine whether substantial evidence supports the challenged findings of fact and if those findings support the conclusions of law. *State v. Campbell*, 166 Wn. App. 464, 469, 272 P.3d 859 (2011). We view unchallenged findings of fact as verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We

---

[6] Otero Torres conflates the issues of whether the evidence of the shotgun was admitted under the open view exception to the warrant requirement or under the consent exception. However, the trial court denied the motion to suppress the shotgun because Otero Torres consented to the search, not because it was in open view. Therefore, Otero Torres's dispute with the trial court's finding about where the officer was standing when the gun was photographed is irrelevant. Nevertheless, dashcam footage recorded Leitgeb stating he saw a shotgun in the truck as he stood at the driver's side window. Leitgeb also testified he stood outside the truck when taking photographs of the partially visible shotgun. Therefore, substantial evidence supported the trial court's finding that Leitgeb was outside the truck when he photographed the shotgun.

review the trial court's conclusions of law on a motion to suppress de novo. *State v. Horrace*, 144 Wn.2d 386, 392, 28 P.3d 753 (2001).

B.     Legal Principles

"The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution generally prohibit searches and seizures absent a warrant or a recognized exception to the warrant requirement." *State v. Hendricks*, 4 Wn. App. 2d 135, 141, 420 P.3d 726 (2018). The State bears the burden of establishing by clear and convincing evidence that an exception applies. *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009). Courts must suppress evidence seized in an unconstitutional search. *State v. Monaghan*, 165 Wn. App. 782, 789, 266 P.3d 222 (2012).

Consent is one of the "few 'jealously and carefully drawn exceptions' to the warrant requirement." *State v. Reichenbach*, 153 Wn.2d 126, 131, 101 P.3d 80 (2004) (internal quotation marks omitted) (quoting *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996)). For a search to be consensual and valid, "(1) the consent must be voluntary, (2) the person granting consent must have authority to consent, and (3) the search must not exceed the scope of the consent." *Reichenbach*, 153 Wn.2d at 131.

"Whether consent is voluntary is a question of fact . . . and depends upon the totality of the circumstances, including (1) whether *Miranda* warnings were given prior to obtaining consent, (2) the degree of education and intelligence of the consenting person, and (3) whether the consenting person was advised of his right not to consent." *Id.* at 132. "No one factor is dispositive." *State v. Bustamante-Davila*, 138 Wn.2d 964, 982, 983 P.2d 590 (1999).

Here, Leitgeb testified he gave Oterro Torres *Miranda* warnings. The dashcam recording corroborated this testimony. Leitgeb also advised Otero Torres multiple times of his right to refuse

the search of his truck, limit its scope, or revoke consent for the search. Otero Torres asked a follow-up question and ultimately consented to the removal of the shotgun from his truck. There is no evidence in the record that Otero Torres was threatened or coerced into consenting. Given the totality of the circumstances, the fact that officers did not ascertain the education or intelligence of Otero Torres is not dispositive, as nothing in the record suggests Otero Torres did not understand the warnings Leitgeb gave. Therefore, substantial evidence supported the trial court's finding that Otero Torres voluntarily consented to the search and seizure of the shotgun. As such, the trial court did not err in denying his motion to suppress.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

### A.    Standard of Review

We review ineffective assistance of counsel claims de novo. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).

### B.    Legal Principles

To prove ineffective assistance of counsel, a defendant must show (1) counsel's representation was so deficient it fell "below an objective standard of reasonableness" and (2) that the deficiency prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting and applying test from *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to satisfy either requirement "'defeats' the claim." *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024) (quoting *Strickland*, 466 U.S. at 700).

First, "[t]he defendant must overcome 'a strong presumption that counsel's performance was reasonable.'" *Bertrand*, 3 Wn.3d at 130 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *Kyllo*, 166 Wn.2d at 863. A "defendant can rebut the

presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *Reichenbach*, 153 Wn.2d at 130).

Second, prejudice requires showing that had counsel's performance not been deficient, "there is a reasonable probability . . . the result of the proceeding would have differed." *Estes*, 193 Wn. App.at 488. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). Therefore, "[p]rejudice exists when there is 'a probability sufficient to undermine [the court's] confidence in the outcome.'" *Bertrand*, 3 Wn.3d at 129 (alterations in original) (quoting *Strickland*, 466 U.S. at 694).

### 1.      Failure to Cross-Examine

Otero Torres argues he received ineffective assistance of counsel because his counsel failed to cross-examine Mackey on alleged inconsistent statements she made on the 911 call regarding whether there was a weapon in the house. We disagree.

"'The extent of cross-examination . . . is a matter of judgment and strategy.'" *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004) (quoting *State v. Stockman*, 70 Wn.2d 941, 945, 425 P.2d 898 (1967)). "[We] will not find ineffective assistance of counsel based on trial counsel's decisions during cross-examination if counsel's performance fell within the range of reasonable representation." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). Further, to show prejudice for failure to cross-examine, "the defendant must show that the testimony that would have been elicited on cross-examination could have overcome the evidence against the defendant." *Id.*

10

Here, Otero Torres cannot show deficient performance or prejudice based on counsel's failure to cross-examine Mackey regarding her alleged inconsistent statements about whether there was a weapon in the house. It was reasonable for Otero Torres's counsel not to cross-examine Mackey about her statements because the recording itself suggests there was no inconsistency in Mackey's testimony. Rather, when Mackey said "No" on the recording after the 911 operator asked her if there were any weapons in the house, this could have been interpreted as being responsive to Otero Torres instead of the 911 operator's question, as Mackey stated she was not separated from Otero Torres and was not free to talk.

Further, Oterro Torres has not shown that whatever testimony might have been elicited on cross-examination would have overcome the evidence against him, including the evidence that the gun case was in the living room when Cartwright arrived, as well as the fact that Oterro Torres had the shotgun in his vehicle when he was arrested.

### 2. Failure to Object to Portion of 911 Call

Otero Torres argues he received ineffective assistance of counsel because his counsel failed to object to the portion of the 911 call in which Mackey stated Otero Torres put the shotgun in her mouth. We disagree.

To show ineffective assistance of counsel for failure to object, a defendant must show that an objection would likely have been sustained. *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

Even if Otero Torres could show deficient performance, he cannot show prejudice because no reasonable probability exists that the outcome of the trial would have differed if counsel had objected to the portion of the 911 call in which Mackey stated Otero Torres put a shotgun in her mouth. While Otero Torres interprets this statement to be in reference to an event that happened

a month prior and was thus improper propensity evidence, the trial court and jury were free to interpret her statement as referring to an event that happened earlier that evening. Therefore, an objection was not likely to have been sustained. However, even if this statement had been struck from the 911 recording, the jury could still consider the rest of the 911 recording, Mackey's testimony, the photographs, the empty gun case in the living room, and evidence of the loaded shotgun that was recovered from Otero Torres's truck. Based on this evidence, our confidence in the outcome of the proceeding is not undermined.

### 3. Failure to Review Photographs

` Otero Torres also argues he received ineffective assistance of counsel due to counsel's failure to review the second set of photos Mackey took of her herself that she testified documented her injuries. We disagree.

Otero Torres cannot show he was prejudiced by this. No reasonable probability exists that the outcome of the trial would have differed if Otero Torres's attorney had reviewed with him the second set of photos that Mackey took of herself. Otero Torres had the opportunity to review the first set of photos which were very similar to the second set. Further, even without the second set of photos, the jury still had the recording, Mackey's testimony, Cartwright's testimony regarding the red marks she saw on Mackey, and the first set of photos to rely on. Based on this evidence, our confidence in the outcome is not undermined, and we conclude Otero Torres has not shown he received ineffective assistance of counsel.

II.    CUMULATIVE ERROR

Otero Torres also argues that the cumulative effect of all the errors he alleges resulted in an unfair trial and requires reversal. We disagree.

"The cumulative error doctrine applies only when several trial errors occurred which, standing alone, may not be sufficient to justify a reversal, but when combined together, may deny a defendant a fair trial." *State v. Hodges*, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). "Absent prejudicial error, there can be no cumulative error that deprived the defendant of a fair trial." *State v. Saunders*, 120 Wn. App. 800, 826, 86 P.3d 232 (2004).

Otero Torres has not shown any prejudicial error that deprived him of a fair trial. Thus, the cumulative error doctrine does not apply.

III.    CVPA

Otero Torres also argues the CVPA should be stricken from his judgment and sentence, and the State agrees it should be stricken

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the CVPA on indigent defendants. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048, *pet. for rev. filed*, 102378-2 (2023).

Otero Torres was found indigent. In light of the statutory changes, we reverse the CVPA and remand with instructions to strike the CVPA.

CONCLUSION

We affirm Otero Torres's convictions, but we reverse the CVPA and remand with instructions to strike the CVPA.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered

_____
Veljacic, J.

We concur:

_____
Lee, J.

_____
Cruser, C.J.

14