# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49490-6-II |
| Petitioner, | |
| v. | |
| WILLIAM HOWARD WITKOWSKI, | PUBLISHED OPINION |
| Respondent. | |
| STATE OF WASHINGTON, | Consolidated with No. 49500-7-II |
| Petitioner, | |
| v. | |
| TINA DEE BERVEN, | |
| Respondent. | |

JOHANSON, J. — Pursuant to a warrant, police found firearms and ammunition in a locked gun safe during a search of Tina Berven and William Witkowski's[1] residence. The superior court suppressed this evidence, ruling that the search exceeded the warrant's scope, and we granted discretionary review. The State argues that under the Fourth Amendment of the United States Constitution, the superior court erred when it concluded that the locked gun safe's contents were

---

[1] We will refer to Berven and Witkowski collectively as "the Respondents."

outside the warrant's scope.  We agree with the State because the warrant authorized a search for firearms and because firearms were likely to be found in the locked gun safe.  We also decline the Respondents' request to affirm on the alternative basis that the Washington Constitution's greater privacy protections under article I, section 7 include that a premises search warrant must expressly authorize the search of locked containers likely to hold the search's object.  Accordingly, we reverse the superior court's ruling suppressing the evidence.

FACTS

I.  SEARCH WARRANT AND ADDENDUM

On October 27, 2015, Deputy Martin Zurfluh obtained a search warrant to search the Respondents' property, including their residence, for evidence of possession of stolen property and utility theft.  The search warrant was limited to a stolen power meter and its accessories.  An arrest warrant for Witkowski was also issued.

On October 29, officers executed the search and arrest warrants.  After this search, Deputy Zurfluh requested an addendum to the search warrant.  In his affidavit, Deputy Zurfluh explained that after entering the Respondents' residence, police found drug paraphernalia, ammunition, one locked gun safe, one unlocked gun safe, a rifle case, and surveillance cameras.  Deputy Zurfluh knew that the Respondents were felons and were prohibited from possessing firearms or ammunition.

The search warrant addendum authorized police to search at the Respondents' street address for evidence of unlawful possession of a firearm, identity theft, unlawful possession of a controlled substance, and unlawful use of drug paraphernalia.  The warrant addendum defined the

2

area to be searched for this evidence as the main residence, a shed, and any vehicles and outbuildings at the street address.

The addendum authorized the seizure of evidence including,

1.      [f]irearms, firearms parts, and accessories, including but not limited to rifles, shotguns, handguns, ammunition, scopes, cases, cleaning kits, and holsters.

. . . .

4.      Surveillance Systems used or intended to be used in the furtherance of any of the above listed crimes.

. . . .

6.      *Any item used as a container for item 4.*

Clerk's Papers (CP) at 68 (emphasis added).  Notably, the addendum did not identify either of the gun safes as items to be seized, although Deputy Zurfluh stated in his affidavit as part of his description of the initial search that officers had found two gun safes in the residence.

When executing the warrant addendum, officers opened the locked gun safe.  They found firearms inside.

Following the second search, the State charged Respondents with numerous counts including first degree unlawful possession of a firearm.  Witkowski was additionally charged with seven counts of possession of a stolen firearm.

## II.  SUPPRESSION MOTIONS AND HEARING

The Respondents moved to suppress all evidence found as a result of the search.  At the suppression hearing, Deputy Zurfluh testified that the locked gun safe was located in the kitchen and that it was about the size of a refrigerator.  Deputy Zurfluh suspected that there were firearms in the safe because he had found ammunition in the home.  In Deputy Zurfluh's experience, tall, upright safes were typically gun safes.

3

Deputy Zurfluh further testified that when officers opened the locked gun safe, they found 11 loaded rifles and shotguns with their serial numbers filed off, a handgun, a police scanner, a large quantity of cash, ammunition, and cameras. The unlocked gun safe was empty.[2]

The superior court suppressed the "evidence found inside the gun safes" under the Fourth Amendment. CP at 100. The superior court ruled that the addendum to the warrant "did not include the gun[] safes or containers for firearms" and that gun safes are not "personal effects," so that "[t]he search of the safe[s] did not fall within the scope of the search warrant." CP at 99-100. The superior court later denied the State's motions for reconsideration.

The State filed motions for discretionary review in both Respondents' cases. We granted the State's motions for discretionary review and consolidated the cases.

ANALYSIS

I. STANDARD OF REVIEW

We review de novo conclusions of law related to the suppression of evidence. *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). We also review de novo whether a search violated the Fourth Amendment to the United States Constitution because it exceeded a warrant's scope and whether article I, section 7 of the Washington Constitution has been violated. *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004); *see State v. Figeroa Martines*, 184 Wn.2d 83, 90, 94, 355 P.3d 1111 (2015).

---

[2] The parties refer to two gun safes—one locked and one unlocked—found within the Respondents' residence. But the unlocked gun safe was empty. Thus, we address only the locked gun safe, from which the superior court suppressed evidence.

## II.  THE FOURTH AMENDMENT

The State argues that the superior court erred under the Fourth Amendment when it suppressed evidence found inside the locked safe based on its determination that the search of the safe fell outside the warrant addendum's scope.  We agree.

### A.  PRINCIPLES OF LAW

The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  When police execute a search warrant under a valid warrant, the search must be strictly within the scope of the warrant.  *Figeroa Martines*, 184 Wn.2d at 94.  We evaluate warrants in a commonsense, practical manner, not in a hypertechnical sense.  *State v. Perrone*, 119 Wn.2d 538, 549, 834 P.2d 611 (1992).

### B.  WITHIN THE SCOPE OF THE WARRANT

The State argues that the locked gun safe was within the warrant's scope because under the Fourth Amendment, when the warrant authorized the search of the premises for evidence of firearms, it authorized the search of the locked gun safe.  The Respondents argue that the search exceeded the warrant's scope because the warrant excluded the locked gun safe by negative

implication and because Deputy Zurfluh was aware of the locked gun safe but did not include it in the search warrant. We agree with the State.[3]

1.      PRINCIPLES OF LAW:  SCOPE OF THE WARRANT

"A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). "Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." *Ross*, 456 U.S. at 821. Similarly, one leading treatise summarizes the law as follows:

> A search made under authority of a search warrant may extend to the entire area covered by the warrant's description. . . .
> . . . .
> Places within the described premises are not excluded merely because some additional act of entry or opening may be required. Thus, in executing a warrant for certain premises the police are entitled to gain entry even into locked rooms on those premises.

2 WAYNE R. LAFAVE, SEARCH AND SEIZURE:  A TREATISE ON THE FOURTH AMENDMENT § 4.10(a), at 932-36 (5th ed. 2012) (footnotes omitted).

---

[3] "Under a search warrant for a premises, the personal effects of the owner may be searched provided they are plausible repositories for the objects named in the warrant." *State v. Hill*, 123 Wn.2d 641, 643, 870 P.2d 313 (1994). Although the State assigns error to the superior court's ruling that the safes were not personal effects, the State advances no argument that this ruling was incorrect nor otherwise explains why the refrigerator-sized safe would be a "personal effect." Thus, we do not reach this issue. *See* RAP 10.3(a)(6).

2. ANALYSIS

a. THE WARRANT ADDENDUM AUTHORIZED THE SEARCH OF LOCKED CONTAINERS IN WHICH THE OBJECT OF THE SEARCH WAS LIKELY TO BE FOUND

Here, the warrant addendum listed the objects of the search as including firearms and firearm accessories. And Deputy Zurfluh testified that he suspected the close-to-refrigerator-sized, locked safe contained firearms because he had found ammunition in the home. Deputy Zurfluh also testified that in his experience, a tall, upright safe would be used to store guns. Under the rule expressed in *Ross*, because one object of the search was "[f]irearms," CP at 68, the premises search warrant addendum authorized the search of the locked gun safe as an area in which the object of the search was likely to be found. *See* 456 U.S at 820-21.

The Respondents assert that the rule from *Ross* is dicta. We nevertheless apply the rule in light of the substantial federal authority on this point. Numerous federal circuit courts have applied the rule from *Ross* to authorize the search of locked items under a premises warrant that could contain the object of the search. *See United States v. Martinez*, 949 F.2d 1117, 1120 (11th Cir. 1992) (citing *Ross* as support and canvassing federal cases holding that a warrant to search a specific area for a certain class of things authorizes breaking open locked containers that may contain the objects of the search).[4]

Washington cases have also expressed the Fourth Amendment rule that a premises warrant authorizes a search of containers in a residence that could reasonably contain the object of the

---

[4] *See also United States v. Hodge*, 714 F.3d 380, 387-88 (6th Cir. 2013); *United States v. Mancari*, 463 F.3d 590, 596 (7th Cir. 2006); *United States v. Gonzalez*, 940 F.2d 1413, 1420 (11th Cir. 1991); *United States v. Snow*, 919 F.2d 1458, 1461 (10th Cir. 1990); *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir. 1984); *United States v. Johnson*, 709 F.2d 515, 516 (8th Cir. 1983); *United States v. Morris*, 647 F.2d 568, 572-73 (5th Cir. 1981).

search.  In *State v. Simonson*, we held that a sealed box containing pills could be searched under a warrant authorizing a search of a trailer home.  91 Wn. App. 874, 878, 887, 960 P.2d 955 (1998).  We stated the rule that "a search warrant for a house authorizes a search of containers in the house that could hold one or more of the items specified in the warrant."  *Simonson*, 91 Wn. App. at 886-87; *see also State v. Olson*, 32 Wn. App. 555, 558-59, 648 P.2d 476 (1982) (language in a premises warrant authorizing a search for illicit drugs authorized officers to inspect "virtually every aspect of the premises").

In another case, Division One of this court did not distinguish between locked and unlocked containers.  *See State v. Llamas-Villa*, 67 Wn. App. 448, 454, 836 P.2d 239 (1992).  In *Llamas-Villa*, officers executing a premises warrant for an apartment entered a storage room outside the apartment, near the front door.  67 Wn App. at 450-51.  They opened a locked storage locker located in the room and marked with the same apartment number.  *Llamas-Villa*, 67 Wn. App. at 451.

The court affirmed denial of a suppression motion related to evidence found in the storage locker.  *Llamas-Villa*, 67 Wn. App. at 451, 453.  It held that police were authorized to search the locker because it was within the scope of places to be searched and that police could break into the locked storage locker because "places which may be searched pursuant to a search warrant are *not excluded due to the presence of locks* or because some additional act of entry or opening may be required."  *Llamas-Villa*, 67 Wn. App. at 454 (emphasis added).

The Respondents argue that *Llamas-Villa* is distinguishable because there the defendant argued that the locker was not part of the premises that the warrant authorized searching.[5] The Respondents are correct that *Llamas-Villa* addressed what constitutes part of the "premises" of an apartment, 67 Wn. App. at 452-53, but the Respondents overlook the other holding of *Llamas-Villa*—that the additional act of breaking into a locked container does not remove the container from the scope of the warrant. 67 Wn. App. at 454.

In sum, federal and state precedent applying the Fourth Amendment show that when police execute a premises warrant, they are authorized to search locked containers where the objects of the search are likely to be found. Thus, the superior court here erred under the Fourth Amendment when it suppressed the evidence in the locked gun safe as exceeding the scope of the warrant addendum.

b.    NOT EXCLUDED FROM SCOPE BY NEGATIVE IMPLICATION

The Respondents argue that because Deputy Zurfluh knew of the locked gun safe when he requested the warrant addendum but the safe was not included in the addendum, the addendum necessarily excluded the locked gun safe. In an argument that conflates the addendum's lists of items to be seized and places to be searched, the Respondents also assert that by "describ[ing] the search of containers for surveillance equipment," the warrant addendum "excluded [the] search of containers for guns." Br. of Resp't Witkowski at 7. The State asserts that Deputy Zurfluh's

---

[5] The Respondents are correct insofar as they argue that *Llamas-Villa* does not expressly address whether a search warrant for objects authorizes opening containers that could reasonably be suspected to contain those objects. This is implicit to, but not stated in, *Llamas-Villa*.

knowledge that a locked gun safe was present is immaterial. We reject both of the Respondents' arguments.

i.    LEGAL PRINCIPLES

Exclusion by negative implication is a canon of statutory interpretation that applies when the circumstances support a sensible inference that the term left out was meant to be excluded. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81, 122 S. Ct. 2045, 153 L. Ed. 2d 82 (2002). Two Washington cases have applied exclusion by negative implication-like reasoning to a search warrant's description of places to be searched.

The parties rely on *Llamas-Villa*, which addressed the issue of whether the storage room and locker within the storage room were part of the premises of an apartment. *See* 67 Wn. App. at 452-53. There, the appellate court found that the locker in the storage room was within the premises warrant's scope. *Llamas-Villa*, 67 Wn. App. at 453. This was so because the police did not include the storage locker in the affidavit supporting the search warrant. *Llamas-Villa*, 67 Wn. App. at 452. Had the locker been included in the affidavit but not included in the warrant, that fact "would have supported an inference that the locker was intentionally excluded from the warrant." *Llamas-Villa*, 67 Wn. App. at 452.

On this point, the *Llamas-Villa* court distinguished our opinion in *State v. Kelley*, 52 Wn. App. 581, 762 P.2d 20 (1988), where outbuildings listed in an affidavit supporting a warrant were not included in the warrant as places to be searched. 67 Wn. App. at 452 (citing 52 Wn. App. at 586). In *Kelley*, we held that a "trial court properly ruled that the search of the outbuildings was outside the scope of the search warrant" because the warrant did not refer to the outbuildings, but the affidavit did. 52 Wn. App. at 585.

10

ii.     GUN SAFE NOT EXCLUDED BECAUSE OF AFFIDAVIT

*Llamas-Villa* and *Kelley* support the Respondents' legal argument that a warrant could

exclude by negative implication items known to the officer requesting the warrant and listed in a

warrant affidavit but intentionally omitted from the warrant itself.  However, we disagree that

exclusion by negative implication applies to the search warrant addendum at issue here because

the affidavit and addendum were identical in their lists of places to be searched and items to be

seized.  Thus, there is no inference that the locked safe was intentionally excluded.

Here, the affidavit in support of the warrant addendum listed the following places to be

searched:

- [Street address of the residence.]  A brown manufactured home that has two windows with white trim facing south and a fully covered front porch attached to the west side of the residence[]
- A brown, elevated shed located northeast of the main residence
- Any and all vehicles and outbuildings located on the property

CP at 66 (bold omitted).  It also included an extensive list of items to be seized, including, as

relevant here,

1.      [f]irearms, firearms parts, and accessories, including but not limited to rifles, shotguns, handguns, ammunition, scopes, cases, cleaning kits, and holsters.
. . . .
4.      Surveillance Systems used or intended to be used in the furtherance of any of the above listed crimes.
. . . .
6.      Any item used as a container for item 4.

CP at 61.  Notably, the warrant addendum's list of places that could be searched and things that

could be seized was identical to the lists in Deputy Zurfluh's affidavit in support of the warrant

addendum.  Where the affidavit and addendum contained identical lists of places to be searched

11

and items to be seized, there is no inference that the locked safe was intentionally excluded, and we hold that exclusion by negative implication does not apply.

And although the warrant addendum affidavit disclosed the presence of the locked gun safe within the residence, it did so in passing, as part of a description of the events that occurred after police executed the original warrant. As part of a lengthy description of the residence's interior, Deputy Zurfluh stated, "In the dining room area there was a large gun safe. There was a spare bedroom to the right, on the east side of the house." CP at 65. It is only this brief reference to the locked gun safe that the Respondents argue gives rise to an inference that the locked gun safe was intentionally omitted from the warrant addendum.

We hold that the warrant addendum affidavit's brief reference to the existence of a locked gun safe as part of a description of the initial search does not give rise to an inference that the locked gun safe was intentionally omitted from the warrant addendum. To the contrary, because the warrant addendum affidavit's lists did not include a locked gun safe and because the superior court authorized identical lists in the addendum, there is no inference that the addendum intentionally omitted a locked gun safe. Because such an inference is not sensible under the circumstances, exclusion by negative implication does not apply. *See Chevron U.S.A.*, 536 U.S. at 81. Thus, although *Kelley* and *Llamas-Villa* support that exclusion by negative implication could apply to search warrants, it does not apply here.

       iii.     "CONTAINERS FOR SURVEILLANCE SYSTEMS" DID NOT EXCLUDE "CONTAINERS FOR GUNS"

As for the Respondents' argument that by listing "containers for surveillance equipment," the search warrant addendum necessarily excluded "containers for guns," we disagree for three reasons. Br. of Resp't Witkowski at 7. First, the Respondents provide no case law holding that

12

the inclusion of containers for one item necessarily excludes containers for another item.[6]  Such a rule improperly ascribes a hypertechnical meaning to a search warrant.  *See Perrone*, 119 Wn.2d at 549.

Second, the Respondents' rule is counter to the established rule from *Ross*:  that by authorizing a search for "firearms," the warrant also authorized a search within containers likely to hold firearms.

Third, the Respondents' argument conflates the items to be seized with the places to be searched:  even if the inclusion of surveillance containers in the list of *items to be seized* necessarily excluded other types of containers, this would not affect the list of *places that could be searched*. Here, the locked safe was a place searched and not an item seized.

In conclusion, we hold that the warrant authorized a search for firearms, and thus, the warrant addendum also authorized a search of the locked gun safe as within the scope of the addendum and under settled Fourth Amendment law.

## III.  ARTICLE I, SECTION 7

Next, we address Berven's article I, section 7 argument.[7]  The Respondents argue that we may affirm the superior court on the basis that the Washington Constitution's greater privacy protections under article I, section 7 include that a premises search warrant must expressly authorize the search of locked containers.  In response, the State argues that under article I, section

---

[6] As noted above, *Llamas-Villa* and *Kelley* discuss items included in the warrant *affidavit* but excluded from the warrant.

[7] Typically we address state constitutional issues first.  *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015).  But here, the superior court did not rule on state constitutional grounds, and accordingly, we first address the superior court's express basis for its ruling.

7, a premises search warrant authorizes a search of locked containers therein, even if the search warrant does not explicitly list the containers. As discussed, we hold that the search was proper under the Fourth Amendment. The Respondents' arguments for a different outcome under article I, section 7 fail.

## A. NECESSITY OF A *GUNWALL* ANALYSIS

At the outset, the Respondents and the State agree that a *Gunwall*[8] analysis is unnecessary because it is well settled that article I, section 7 is interpreted independently of the Fourth Amendment. We agree.

The first step "[w]hen a party claims a provision of the state constitution provides greater protection than" its federal counterpart is to "determine whether an independent analysis of the state constitutional provision is warranted."[9] *McNabb v. Dep't of Corr.*, 163 Wn.2d 393, 399, 180 P.3d 1257 (2008). If "it is settled law that an independent analysis should be conducted," we proceed to the second step and conduct the independent analysis. *McNabb*, 163 Wn.2d at 399.

Our Supreme Court has repeatedly held that under step one, it is settled law that an independent analysis must be conducted when interpreting article I, section 7 because article I, section 7 qualitatively differs from the Fourth Amendment and in some cases provides greater protections than does the federal constitution. *See, e.g.*, *McNabb*, 163 Wn.2d at 400 ("It is well settled that the privacy protections provided by article I, section 7 of the Washington Constitution have an independent meaning from that provided by the federal constitution."); *State v. Athan*, 160

---

[8] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[9] We examine the *Gunwall* factors only if "it is not settled law that an independent analysis should be conducted." *McNabb*, 163 Wn.2d at 399.

Wn.2d 354, 365, 158 P.3d 27 (2007) (same). "Accordingly, a *Gunwall* analysis is unnecessary to establish that this court should undertake an independent state constitutional analysis." *Athan*, 160 Wn.2d at 365 (footnote omitted); *see also State v. McKinney*, 148 Wn.2d 20, 26, 60 P.3d 46 (2002) (same); *State v. Chenoweth*, 160 Wn.2d 454, 463, 158 P.3d 595 (2007) (same).

"The only relevant question is whether article I, section 7 affords enhanced protection in the particular context." *Athan*, 160 Wn.2d at 365. We look to whether there was "a disturbance of one's private affairs and, if so," whether "the disturbance [was] authorized by law."[10] *Athan*, 160 Wn.2d at 366.

Since *Athan* was decided, nearly every Supreme Court case to examine the issue has followed the rule set forth in *Athan*. *See, e.g.*, *State v. Hinton*, 179 Wn.2d 862, 867-68, 319 P.3d 9 (2014) (addressing whether individuals have an expectation of privacy in the content of their text messages under article I, section 7, an issue of first impression, without undertaking a *Gunwall* analysis); *State v. Fry*, 168 Wn.2d 1, 5-6 & n.2, 228 P.3d 1 (2010) (addressing whether under the circumstances, a telephonic search warrant was supported by probable cause, as required by article

---

[10] Although there were two dissents and one concurrence to *Athan*, neither the concurrence nor dissents took issue with the majority's holding that no *Gunwall* analysis was necessary. The only dissent or concurrence to even mention *Gunwall* was Justice Fairhurst's dissent, in which she agreed with the majority that it was "no longer necessary to analyze the factors set out in" *Gunwall* "to determine whether it is appropriate to conduct an independent state constitutional analysis under article I, section 7 with regard to search and seizure questions." *Athan*, 160 Wn.2d at 399 (Fairhurst, J., dissenting).

I, section 7, and noting that "[a]rticle I, section 7 provides greater privacy protection than the Fourth Amendment, and an analysis under [*Gunwall*] is not necessary").[11]

In light of this authority, we conclude that a *Gunwall* analysis is unnecessary before we undertake an individual state constitutional analysis under article I, section 7.

### B. AUTHORITY OF LAW

Agreeing that article I, section 7 is given an independent effect, the parties ask us to determine what protection our state constitution provides when police executing a search warrant search locked containers in a residence. Specifically, the parties dispute whether the search warrant addendum conferred the "authority of law" to disturb the Respondents' private affairs.[12] Br. of Resp't Berven at 19; Am. Suppl. Br. of Appellant at 4. We hold that the warrant addendum authorized a search of the locked safe and accordingly that police acted under the authority of law under article I, section 7.

---

[11] We disagree with the concurrence's reliance on *Blomstrom v. Tripp*, 189 Wn.2d 379, 401, 402 P.3d 831 (2017), where the Supreme Court conducted a *Gunwall* analysis under article I, section 7. The issue decided in *Blomstrom* was not whether to do a *Gunwall* analysis, and the case does not stand for the principle that a *Gunwall* analysis must be redone in every context under article I, section 7. *See D'Amico v. Conguista*, 24 Wn.2d 674, 683, 167 P.2d 157 (1946) (statements in a case regarding a question not presented in that case are not binding). Neither does *Sprague v. Spokane Valley Fire Department*, ___ Wn.2d ___, 409 P.3d 160, 172 (2018), also relied upon by the concurrence, require a *Gunwall* analysis under article I, section 7. In *Sprague*, the Supreme Court rejected an argument for greater free speech protections under an unidentified portion of the state constitution because the proponent failed to brief the *Gunwall* factors. 409 P.3d at 172. *Sprague*'s brief reference to *Gunwall* to reject a claim of broader protection under an unspecified state constitutional provision does not overrule the well-developed article I, section 7 jurisprudence stating that a *Gunwall* analysis is unnecessary.

[12] Article I, section 7 requires a two-step analysis: (1) was there a disturbance of one's private affairs and, if so, (2) was the disturbance authorized by law. *Athan*, 160 Wn.2d at 366. The parties do not contest that intrusion into the locked safe constituted a disturbance of private affairs.

"The 'authority of law' required by article I, section 7 is a valid warrant unless the State shows that a search or seizure falls within one of the jealously guarded and carefully drawn exceptions to the warrant requirement." *Hinton*, 179 Wn.2d at 868-69; *see also State v. Gaines*, 154 Wn.2d 711, 718, 116 P.3d 993 (2005) (a lawfully issued search warrant provides authority of law).

The parties provide no Washington case law directly addressing whether article I, section 7 prohibits the search of locked containers under a premises search warrant unless the locked containers are specifically included as places to be searched, and this appears to be an issue of first impression.[13] However, in interpreting "authority of law" under article I, section 7, our Supreme Court has repeatedly held that a "warrant based on probable cause" is sufficient to authorize a disturbance of private affairs. *See State v. Reeder*, 184 Wn.2d 805, 817, 365 P.3d 1243 (2015); *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007); *Gunwall*, 106 Wn.2d at 69; *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 343, 945 P.2d 196 (1997). A warrant is sufficient because the warrant process "ensures that some determination has been made which supports the scope of the invasion" and reduces mistaken intrusions. *Miles*, 160 Wn.2d at 247. A warrant also protects

---

[13] The State relies on *Figeroa Martines*, which is not directly on point. In *Figeroa Martines*, a defendant argued that a warrant to extract a blood sample lacked particularity to authorize blood testing. 184 Wn.2d at 92. Noting that both "article I, section 7" and the Fourth Amendment require that warrants describe things to be seized with particularity, *Figeroa Martines* held that the warrant authorized blood testing when it authorized a blood draw. 184 Wn.2d at 92-93. *Figeroa Martines*'s reference to article I, section 7 suggests that article I, section 7 and the Fourth Amendment are interpreted identically in the context of determining what a warrant authorizes. 184 Wn.2d at 93. However, *Figeroa Martines* is not directly on point because no party appears to have argued that article I, section 7 does not allow police to search locked containers under a warrant.

against "unreasonable governmental intrusions." *State v. Jackson*, 102 Wn.2d 432, 443, 688 P.2d 136 (1984).

The Respondents argue that a rule that a warrant must specifically list "locked containers" before law enforcement could search inside locked containers advances the rationales underlying the warrant requirement. Br. of Resp't Berven at 17. But the Respondents also admit that their proposed rule would be satisfied if "[t]he affiant . . . simply ask[ed] for authority to open all locked containers capable of holding the objects sought." Br. of Resp't Berven at 17. It is unclear how a requirement that would result in police routinely requesting to search containers that hold the object of their search would either reduce government intrusion or limit the scope of invasion.

The Respondents also argue that locked containers have heightened protection under article I, section 7, so that an additional search warrant is required before police executing a premises warrant may search locked containers. But the cases that the Respondents rely on as support that locked containers are entitled to heightened protections under article I, section 7 are distinguishable.

In *State v. Monaghan*, Division One of this court addressed the consent exception to the warrant requirement under article I, section 7. 165 Wn. App. 782, 788, 266 P.3d 222 (2012). It held that the search of a locked container in a car was not valid under the consent exception because searching the locked container exceeded the scope of the consent to search the car. *Monaghan*, 165 Wn. App. at 789. Similarly, in *State v. Stroud*, the Supreme Court held that police could not search locked containers in a vehicle when executing a search incident to arrest. 106 Wn.2d 144, 152, 720 P.2d 436 (1986), *overruled on other grounds by State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009).

18

Not only are *Monaghan* and *Stroud* distinguishable because they involve warrant exceptions and the searches of containers in cars, but the underlying rationales are different.[14] In Washington, locked containers in cars are given greater privacy expectations than unlocked containers in cars. *State v. Vrieling*, 144 Wn.2d 489, 493-94, 28 P.3d 762 (2001). This rule derives from case law concerning searches of vehicles incident to arrest, and the rule's double rationales are that the privacy interest in a locked container in a vehicle outweighs the exigencies of an arrest and that locked containers are less likely to conceal a weapon. *State v. Fladebo*, 113 Wn.2d 388, 395, 779 P.2d 707 (1989).

The Respondents provide no case or argument about how these rationales related to warrantless vehicle searches incident to an arrest apply to a premises search under the authority of a search warrant. Indeed, a home already receives the highest level of protection under our state constitution, *State v. Young*, 123 Wn.2d 173, 185, 867 P.2d 593 (1994), so that it makes little sense to extend additional protections to privacy interests in locked containers within a home that are likely to contain an item to be seized under the warrant.

We reject the Respondents' request to extend the protection of locked containers in warrantless vehicle searches to a premises searched under a warrant. Instead, we hold that under article I, section 7, a premises search warrant authorizes a search of a locked container in the residence where the locked container is a likely repository for evidence specifically targeted by the search warrant. Here, the police acted under authority of law when they executed the search

---

[14] The Respondents also submitted *State v. Tyler*, dealing with the inventory search exception and stating that consent is required to search locked containers under that exception because locked containers in a vehicle are not included within the inventory search exception. 177 Wn.2d 690, 709, 712, 302 P.3d 165 (2013). Reliance on this case is unpersuasive because, like *Monaghan* and *Stroud*, *Tyler* deals with an exception to the warrant requirement and containers in *vehicles*.

warrant addendum and searched the locked gun safe.  Accordingly, we hold that the Respondents'

article I, section 7 argument fails as an alternative ground upon which to affirm the superior court.

   We reverse.

_____

JOHANSON, J.

I concur:

_____

MAXA, C.J.

SUTTON, J. (concurring) — I concur with the majority that the trial court erred in suppressing the evidence under the Fourth Amendment. I write separately because Berven and Witkowski failed to adequately brief the *Gunwall* factors arguing that a *Gunwall* analysis was unnecessary. Although the parties agreed that a *Gunwall* analysis was not required, our Supreme Court recently made clear that we do not examine whether the state constitution provides greater protection in a particular context than the United States Constitution unless the parties adequately brief the *Gunwall* factors. *Sprague v. Spokane Valley Fire Dep't et al.*, No. 93800-8 (Wash. Jan. 25, 2018). Thus, I would decline to consider Berven and Witkowski's argument under article 1, section 7 as it was not argued below, and thus, I would only consider the argument under the Fourth Amendment.

*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986) held that there are six, nonexclusive criteria to determine whether our state constitution affords broader rights to its citizens in a particular context than does the United States Constitution.[15] The parties' failure to argue, sufficiently cite to authority, and brief these criteria means that they have not sufficiently argued the matter, and thus, we may not consider it. *State v. Wethered*, 110 Wn.2d 466, 472, 755 P.2d 797 (1988).[16]

---

[15] The six criteria are: "(1) the textual language, (2) differences in the texts, (3) constitutional history, (4) preexisting state law, (5) structural differences, and (6) matters of particular state or local concern." *Gunwall*, 106 Wn.2d at 58.

[16] The majority cites several cases where our Supreme Court has held that a *Gunwall* analysis is not necessary because it is well settled that article 1, section 7 is interpreted independently of the Fourth Amendment: *McNabb v. Dep't of Corrections*, 163 Wn.2d 393, 399, 180 P3d 1257 (2008); *State v. Athan*, 160 Wn.2d 354, 365, 158 P.3d 27 (2007), *State v. McKinney*, 148 Wn.2d 20, 26, 60 P.3d 46 (2002), and *State v. Chenoweth*, 160 Wn2d 454, 463, 158 P.3d 595 (2007). I agree that the law is well settled in certain contexts but it is not well settled in the context presented by this case.

"Whether the Washington Constitution provides a level of protection different from the federal constitution *in a given case* is determined by reference to the six nonexclusive *Gunwall* factors." (Italics ours.) *State v. Young,* 123 Wn.2d 173, 179, 867 P.2d 593 (1994). Where the *Gunwall* factors are not adequately briefed by the parties, this court will not consider whether the state constitution provides greater protection than that provided by the federal constitution under the circumstances presented.

*State v. Cantrell*, 124 Wn.2d 183, 190 n.19, 875 P.2d 1208 (1994) (citations omitted). "A determination that a given state constitutional provision affords enhanced protection in a particular context does not necessarily mandate such a result in a different context." *State v. Russell*, 125 Wn.2d 24, 58, 882 P.2d 747 (1994) (citing *State v. Boland*, 115 Wn.2d 571, 576, 800 P.2d 1112 (1990)).

This historical rule has been repeatedly iterated and reaffirmed recently in *Blomstrom v. Tripp*, 189 Wn.2d 379, 402 P.3d 831 (2017) and in *Sprague*. In *Blomstrom*, our Supreme Court held that,

> Generally speaking, "[i]t is . . . axiomatic that article 1, section 7 provides greater protection to an individual's right of privacy than that guaranteed by the Fourth Amendment." *State v. Parker*, 139 Wn.2d 486, 493, 987 P.2d 73 (1999) (plurality opinion); *City of Seattle v. McCready*, 123 Wn.2d 260, 267, 868 P.2d 134 (1994) ("It is by now commonplace to observe Const. art. 1, § 7 provides protections for the citizens of Washington which are qualitatively different from, and in some cases broader than, those provided by the Fourth Amendment."). Unlike our state constitution, the Fourth Amendment does not explicitly protect a citizen's "private affairs." *State v. Jones*, 146 Wn.2d 328, 332, 45 P.3d 1062 (2002); *McCready*, 123 Wn.2d at 267. *But this enhanced protection depends on the context in question.*

189 Wn.2d at 399-400 (emphasis added). The issue in *Blomstrom* was, "whether the petitioners' urinalysis testing requirements violate either article I, section 7 of the Washington Constitution or the Fourth Amendment to the United States Consitution. The parties also ask[ed] that we determine whether article I, section 7 is more protective than—and should be interpreted separately

from—the Fourth Amendment *in this context*." *Blomstrom*, 402 P.3d at 399 (emphasis added). The parties were required to and did brief and analyze the *Gunwall* factors.

More recently, in *Sprague*, the appellant claimed that his employer's policy violated his right to free speech under the state constitution, but he did not brief the *Gunwall* factors. Our Supreme Court declined to consider his claim under the state constitution and held that "[w]e will not examine whether the Washington Constitution provides greater protection than the United States Constitution unless a party adequately briefs the *Gunwall* factors." *Sprague*, slip op. at 12.

Here, Berven and Witkowski asserted that a *Gunwall* analysis was unnecessary for this court to address their argument under article I, section 7. Br. of Resp. at 16, n.7. This court ordered the State to respond to their article I, section 7 argument including specifically whether a *Gunwall* analysis was required. The State agreed with Berven and Witkowski's assertion that a *Gunwall* analysis was not required. However, under our Supreme Court's recent holdings in *Sprague* and *Blomstrom*, a *Gunwall* analysis is still required before this court will address an argument on independent state constitutional grounds. Because the parties have failed to provide a *Gunwall* analysis demonstrating that this court should analyze article I, section 7 independently from the Fourth Amendment in this case, I would decline to consider their article I, section 7 argument.

Accordingly, I would address Berven and Witkowski's arguments only under the Fourth Amendment. Because I agree with the majority's analysis under the Fourth Amendment, I concur in the result.

Sutton, J.
_____
SUTTON, J.

23