# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53255-7-II |
| Respondent, | |
| v. | |
| JAMES WALTER CLARK, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Officers executed two search warrants involving James Walter Clark. At his home and in his car, officers found various evidence that Clark was selling methamphetamine, including texts on a cell phone. Clark was tried on charges of possession with intent to deliver methamphetamine, second degree possession of stolen property, and bail jumping. The jury found Clark guilty of possession with intent to deliver methamphetamine and bail jumping, but not possession of stolen property.

Clark appeals his convictions. He argues that the trial court abused its discretion by admitting text messages without sufficient authentication. He also contends that the to convict jury instruction for bail jumping was insufficient and violated his right to due process. Finally, Clark claims the trial court erroneously excluded evidence that he appeared for a hearing subsequent to his failure to appear.

We conclude that the State presented sufficient evidence to authenticate the admitted text messages. Any error in the jury instruction was harmless, and the trial court did not err by excluding evidence of Clark's subsequent court appearance.

Clark filed a statement of additional grounds (SAG), but none of the arguments raised in Clark's SAG merits reversal.

We affirm Clark's convictions.

FACTS

I. INVESTIGATION AND SEARCH WARRANTS

Officers from the Vancouver Police Department obtained a warrant to search Clark's home and person for evidence of possession with intent to deliver methamphetamine and heroin. The affidavit in support of the warrant identified Clark as "James 'Jim' Walter Clark." Clerk's Papers (CP) at 35.

While officers were watching Clark's home, they saw a person who appeared to be Clark leave in a car with two or three other people. Officers stopped the car for speeding and because the warrant authorized a search of Clark's person. Clark was driving, and he told officers that the car belonged to him. Officers saw a bag of "white substance" in the front driver-side door, and a trained K-9 alerted in that area. CP at 48. Officers then seized the car pending an application for a warrant to search it. A cellular phone remained on the front passenger seat. Clark's son, Zachary Haedike, had been in the vehicle and asked to retrieve the phone, but officers denied this request. Haedike identified the cell phone as his father's.

The officers and Clark then returned to Clark's home, and officers conducted an extensive search of the property. They recovered methamphetamine, multiple scales, baggies, and other drug paraphernalia. During the search, officers retrieved a safe from an upstairs bedroom closet. When Detective Zachary Ripp showed the safe to Clark, Clark said he "couldn't remember where the key was." 1 Verbatim Report of Proceedings (VRP) at 175. So, detectives used a pry bar to open

the safe. Ripp later explained, "Our first procedure is to try to open [the safe] without damaging something and because there was no key, we had to damage it to open it up." 1 VRP at 176. The safe contained methamphetamine and documents with Clark's name on them.

Officers then obtained a warrant to search Clark's car. The affidavit in support of the warrant requested a search of the vehicle for evidence of possession of controlled substances, related contraband, and any fruits of crime. This included cellular phones and text messages. Officers recovered a bag with "crystal like substance," a "glass smoking device," and the cell phone that had been left on the front passenger seat. 2 VRP at 239.

The State originally charged Clark with possession with intent to deliver methamphetamine, possession of heroin, second degree possession of stolen property, and third degree possession of stolen property. Before trial, the State dismissed the charges of possession of heroin and third degree possession of stolen property.

## II. FAILURE TO APPEAR

An omnibus hearing was scheduled for May 15, 2018. Clark was present in the courtroom on April 19, 2018 when the trial court scheduled the omnibus hearing, and he left the courtroom with a scheduling order in his hand. The scheduling order listed all upcoming required court appearances, including the omnibus hearing on May 15, 2018.

Clark's required court appearances were not listed chronologically on the court's scheduling order. Although the omnibus hearing was Clark's next required appearance, it was listed third on the order that Clark received.

It is undisputed that Clark failed to appear at the omnibus hearing on May 15, 2018. Clark did appear at the following required court appearance, the readiness hearing on June 7, 2018. The readiness hearing was listed first on Clark's scheduling order.

The State filed an amended information adding a charge of bail jumping on a class B or C felony.

### III. PRETRIAL MOTIONS IN LIMINE

Clark filed a motion in limine to exclude any text messages from the cell phone that was recovered from the front passenger seat of his car, arguing the State could not authenticate the messages as required by ER 901. The State responded that the phone was located within Clark's car and Clark's son had identified the phone as belonging to Clark. The State also argued that the contents of the phone would support its authentication because "Facebook, Google Drive, and Google Photo accounts on the phone were linked to 'James Clark,'" the e-mail address on the phone contained "jamesclark," and "several messages on the phone [were] addressed to 'Jim' and the sender refers to himself as 'Jim' on other occasions." CP at 31. The trial court denied Clark's motion, holding the State's evidence was sufficient to present the messages to the jury and Clark's objection went to the weight of the text messages as evidence, rather than to their admissibility.

The State filed a motion in limine to exclude any evidence regarding Clark's subsequent appearance in court after his failure to appear on May 15, 2018. The State argued this evidence was irrelevant and inadmissible under ER 401 and 402. The State explained that it needed to prove "the defendant had knowledge he was required to appear on May 15, 2018 and that he failed to do so," and Clark's "subsequent reappearance in court does not prove or disprove any of those

elements." CP at 57. Further, the State contended that even if the evidence of Clark's subsequent appearance were relevant, it was still inadmissible under ER 403 because "any remedial measures taken by the defendant after his failure to appear can only serve the purpose of eliciting sympathy and muddying the waters around the actual issue at trial: that he failed to appear on a specific date." CP at 58.

Clark's defense to the charge of bail jumping was that the scheduling order was confusing, the court dates were not listed chronologically, and Clark appeared on the date listed first. Therefore, according to Clark, evidence of his later appearance showed that he did not *knowingly* fail to appear; he was just confused about his court dates. The trial court granted the State's motion and informed Clark that he could still argue his defense theory without presenting evidence of a subsequent appearance.

IV. TRIAL

At trial, Ripp testified about the contents of the cell phone that was recovered from the front passenger seat of Clark's car. Ripp identified himself as a "certified [cellebrite] operator and certified [cellebrite] physical analyst," which he explained means he "extract[s] data from cell[]phones." 2 VRP at 261. Ripp testified that he located "multiple accounts in the name of James Clark" on the phone and an e-mail address "associated with James Clark." 2 VRP at 263.

Ripp also took photographs of text messages from the phone. There were text messages with contacts identified as "Zach SON" and "Zach's Girlfriend." Ex. 68. There were also several received text messages with an introduction of "hey Jim" or "good morning, Jim" and one sent text stating, "[T]his is Jim." 2 VRP at 279, 282, 289, 300. Ripp testified, "[W]e knew that James Clark also went by the name Jim." 2 VRP at 289. One message referenced a meeting place "right

down the street from [Clark's] residence," and another referenced a meeting place "a few blocks away from the residence." 2 VRP at 277, 282.

To undermine the reliability of the text messages as evidence against Clark, Clark's caregiver testified that Clark's son, Haedike, who had been in the vehicle during the traffic stop, used Clark's phone "quite a bit." 2 VRP at 341. She told the jury that Haedike would borrow his father's phone and sometimes take it with him when he left the house.

To prove Clark had knowledge of his May 15, 2018 omnibus hearing, the State played a video recording showing Clark in the courtroom when the judge asked, "[H]ow about May 15th at 1:30?" 2 VRP at 323. It also showed Clark walking out of the courtroom with a scheduling order in his hand. The prosecuting attorney who handled the docket that day testified that she wrote all of Clark's required court appearances on the scheduling order, including the date for the omnibus hearing. The order was admitted into evidence. On cross-examination, defense counsel clarified, "So, the way that the Court listed them orally, the dates were actually in reverse order, correct? . . . And then on the form that is given to the parties, isn't it true that the dates are not listed in sequential order?" 2 VRP at 328. The prosecuting attorney confirmed this.

The jury was instructed that to find Clark guilty of bail jumping, they had to find beyond a reasonable doubt that Clark failed to appear on May 15, 2018, he had been charged with possession with intent to deliver methamphetamine and possession of stolen property, he "had been released by court order with knowledge of the requirement of a subsequent personal appearance before that court," and these acts occurred in the state of Washington. CP at 163; *see also* 2 VRP at 360. The State proposed these instructions, and Clark did not object to them.

In her closing argument, Clark's counsel emphasized that the offense of bail jumping requires knowledge. She argued that the scheduling order was "confusing" because the omnibus hearing date was "listed at the bottom of [Clark's] form, even though it's the first court date that [he's] being ordered to appear at," and she asked the jury to carefully consider whether Clark "knowingly failed to appear." 2 VRP at 393-94. Clark did not dispute that the order said he had to appear on May 15, 2018, nor did he dispute that he failed to appear on that date.

The jury found Clark guilty of possession with intent to deliver methamphetamine and bail jumping.

## ANALYSIS

### I. AUTHENTICATION OF TEXT MESSAGES

Clark argues the State failed to properly authenticate text messages it offered into evidence as required by ER 901(a). We disagree.

A.      Authenticating Text Messages under ER 901(a)

We review the trial court's rulings on the admissibility of evidence for an abuse of discretion. *State v. Bradford*, 175 Wn. App. 912, 927, 308 P.3d 736 (2013). The trial court has wide discretion in determining which exhibits to admit. *State v. Campbell*, 103 Wn.2d 1, 21, 691 P.2d 929 (1984). We reverse "only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons." *State v. Horn*, 3 Wn. App. 2d 302, 312, 415 P.3d 1225 (2018).

ER 901 requires a threshold finding that evidence is authentic before it is admitted "to assure that evidence is what it purports to be." *State v. Payne*, 117 Wn. App. 99, 106, 69 P.3d 889 (2003). The proponent of the evidence satisfies this rule "'if sufficient proof is introduced to permit

a reasonable trier of fact to find in favor of authentication or identification.'" *Bradford*, 175 Wn. App. at 928 (quoting *State v. Danielson*, 37 Wn. App. 469, 471, 681 P.2d 260 (1984)). ER 901 does not limit the type of authenticating evidence permitted; it "'merely requires some evidence'" to support a finding that the evidence is what its proponent claims. *Payne*, 117 Wn. App. at 106 (quoting *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989)).

ER 901(b) offers an illustrative but not exhaustive list of examples. It includes a specific subsection on e-mail communications, which permits consideration of "[t]estimony by a person with knowledge that . . . the e-mail purports to be authored or created by the particular sender," "the e-mail purports to be sent from an e-mail address associated with the particular sender," and the e-mail contains "distinctive characteristics," like the "appearance, contents, substance, [and] internal patterns . . . taken in conjunction with the circumstances." ER 901(b)(10). This subsection has also been applied to text messages. *See In re Det. of H.N.*, 188 Wn. App. 744, 759, 355 P.3d 294 (2015).

When ruling on authentication, the trial court "'considers only the evidence offered by the proponent and disregards any contrary evidence offered by the opponent.'" *State v. Young*, 192 Wn. App. 850, 857, 369 P.3d 205 (2016) (quoting *Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 86, 272 P.3d 865 (2012)). Any contrary evidence would go to the weight of the admitted evidence, not its admissibility. *Id.*

B.      Sufficiency of the Evidence to Authenticate Clark's Text Messages

Here, there was sufficient evidence to permit a reasonable trier of fact to find that the text messages were what the State claimed they were—text messages authored or received by Clark. In its response to Clark's motion in limine, the State pointed out that the cell phone was recovered

from the front passenger seat of Clark's car and Clark's son told officers that the phone belonged to his father.

Further, the State argued that the contents of the phone and the text messages corroborated their authenticity. *See* ER 901(b)(10)(iii) (permitting consideration of a communication's contents and distinctive characteristics). The State informed the trial court preliminarily that "Facebook, Google Drive, and Google Photo accounts," as well as an e-mail account on the phone, "were linked to 'James Clark'" and "several messages on the phone [were] addressed to 'Jim' and the sender refers to himself as 'Jim' on other occasions." CP at 31. Although Clark argues there was no evidence that he went by "Jim," Ripp referred to Clark as "James 'Jim' Walter Clark" in his affidavit in support of the initial search warrant. CP at 35.

Clark attempts to cast doubt on his authorship of the messages by pointing out that the phone was found on the front passenger seat of the car, rather than on the driver's seat or Clark's person, and there was no testimony proving to whom the phone number was registered. Clark also offered testimony that his son regularly took and used his phone.

None of this shows that the trial court erred in admitting the text messages. The State, as the proponent of this evidence, only needed to show evidence sufficient for a reasonable trier of fact to find authenticity. *Bradford*, 175 Wn. App. at 928. The State met that burden. The trial court did not need to consider any contrary evidence in making its preliminary ruling. *Young*, 192 Wn. App. at 857. Clark's arguments cast doubt on the weight the jury should give the messages, not their admissibility. Clark was properly able to raise his contrary evidence before the jury, including that his son sometimes used his phone.

In sum, the trial court did not abuse its discretion when it admitted the text messages. Because the trial court did not abuse its discretion, we need not reach the issue of prejudice.

## II. BAIL JUMPING

A.     Elements of Bail Jumping in 2018

In 2018, when Clark missed his omnibus hearing, a person was guilty of bail jumping when they had "been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state" and then failed to appear. Former RCW 9A.76.170(1) (2001). The pattern jury instruction repeats this statutory language and describes the knowledge element of bail jumping as "knowledge of the requirement of a subsequent personal appearance before that court." 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 120.41 (4th ed. 2016) (WPIC) (brackets omitted); *see also* CP at 90, 163 (proposing and adopting this jury instruction). "[K]nowledge" exists where a person "is aware of a fact" or "has information which would lead a reasonable person in the same situation to believe that fact[] exist[s]." RCW 9A.08.010(1)(b).

When the Washington Legislature amended the bail jumping statute in 2001, it "altered the *mens rea* from knowingly failing to appear on a specific date to failing to appear after being released with knowledge of the requirement of a subsequent personal appearance." WPIC 120.41 cmt. We interpreted this statutory amendment to mean that "the State must prove only that [the defendant] was given notice of his court date—not that he had knowledge of this date every day thereafter"—in order to satisfy the knowledge element. *State v. Carver*, 122 Wn. App. 300, 306, 93 P.3d 947 (2004); *see also State v. Boyd*, 1 Wn. App. 2d 501, 517, 408 P.3d 362 (2017) (holding that the State presented sufficient evidence to satisfy the knowledge element where it admitted a

scheduling order with the date of the omnibus hearing and the defendant's signature).[1] "'I forgot' is not a defense to the crime of bail jumping." *Carver*, 122 Wn. App. at 306.

B.     Jury Instructions

Clark argues that the to convict instruction for the bail jumping charge failed to accurately describe an essential element of the offense and thus violated Clark's Fourteenth Amendment right to due process. Clark reasons that the instruction described the knowledge element as satisfied whenever a defendant is released with "'knowledge of the requirement of *a* subsequent personal appearance,'" rather than knowledge of the requirement of *the* specific subsequent appearance that was missed. Br. of Appellant at 11 (emphasis added) (quoting CP at 163). "Under this instruction, the jury could convict Clark if it found he failed to appear at the May 15, 2018 omnibus hearing and he had been released with knowledge of *any* required subsequent personal appearance." *Id.* We need not decide whether the instruction was constitutionally inadequate because any error was harmless beyond a reasonable doubt.[2]

We presume an instructional error is prejudicial "unless it affirmatively appears to be harmless." *State v. Clausing*, 147 Wn.2d 620, 628, 56 P.3d 550 (2002). On appeal, the State bears the burden of proving that any error at trial was harmless. *State v. Watt*, 160 Wn.2d 626, 635, 160

---

[1] The current version of the bail jumping statute codifies this interpretation. *See* RCW 9A.76.170(1)(b)(i) ("A person is guilty of bail jumping if he or she . . . [i]s released by court order or admitted to bail, *has received written notice* of the requirement of a subsequent personal appearance before any court of this state . . . and fails to appear." (emphasis added)).

[2] Division Three recently held that the pattern to convict instruction for bail jumping violated a defendant's constitutional right to due process. *See State v. Bergstrom*, ___ Wn. App. 2d ___, 474 P.3d 578, 582 (2020). The *Bergstrom* court also concluded that the error was harmless. *Id.*

P.3d 640 (2007). A constitutional error is harmless "if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." *Id.* at 636.

It was undisputed at trial that Clark was given notice he was required to appear on May 15, 2018. This is sufficient to satisfy the knowledge element. *Carver*, 122 Wn. App. at 306. Clark was present in the courtroom when the hearing date was chosen, the trial court orally gave Clark the date, and Clark left the courtroom with a scheduling order listing all of his upcoming court dates. The fact that the dates were not listed chronologically does not mean the State failed to provide notice. Overwhelming untainted evidence established the elements of bail jumping.

C.      Exclusion of Evidence that Clark Appeared at a Later Hearing

Clark also argues the trial court denied his right to present a complete defense by excluding evidence that he appeared at the readiness hearing subsequent to his failure to appear at the omnibus hearing. He claims his later appearance was "relevant to [his] knowledge of required personal appearances, an essential element of the bail jumping charge." Br. of Appellant at 13. We disagree.

To determine whether the exclusion of evidence violates a defendant's constitutional right to present a defense, we engage in a two-part analysis. *State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). In addition to reviewing the trial court's evidentiary rulings for an abuse of discretion, we consider de novo whether those rulings deprived the defendant of their right to present a defense. *Id.* Under *Arndt*, this constitutional question must be analyzed even where there is no evidentiary error. *See id.* at 812. Therefore, we address the constitutional question first. "[I]f there were a constitutional violation, there is no need to address whether an evidentiary error has occurred." *State v. Jennings*, 14 Wn. App. 2d 779, 789, 474 P.3d 599 (2020).

In analyzing whether the trial court's evidentiary ruling violated Clark's Sixth Amendment right to present a defense, we balance the State's interest in excluding the evidence against Clark's need to admit it. *Arndt*, 194 Wn.2d at 812. In *Arndt*, the Supreme Court held that because the defendant was able to advance her defense theory despite the trial court's evidentiary rulings, the defendant's Sixth Amendment rights were not violated. *Id.* at 814. The court distinguished this circumstance from a situation where the excluded evidence "was 'evidence of extremely high probative value; it [was the defendant's] entire defense.'" *Id.* at 813 (quoting *State v. Jones*, 168 Wn.2d 713, 721, 230 P.3d 576 (2010)).

Here, like in *Arndt*, Clark was able to advance his defense theory despite the trial court's evidentiary rulings. During cross-examination, defense counsel was able to elicit testimony describing how the court dates were listed, both orally by the judge and in writing on the scheduling order: "So, the way that the Court listed them orally, the dates were actually in reverse order, correct? . . . And then on the form that is given to the parties, isn't it true that the dates are not listed in sequential order?" 2 VRP at 328. During closing argument, defense counsel argued that the scheduling order was "confusing" and pointed out that the omnibus hearing date was "listed at the bottom of [Clark's] form, even though it's the first court date that [he's] being ordered to appear at." 2 VRP at 393-94. And the jury had access to Clark's scheduling order during its deliberations. Because the trial court's ruling did not exclude Clark's entire defense, there was no constitutional violation.

Turning to whether the trial court nevertheless erred in applying the rules of evidence, we review its rulings for an abuse of discretion. *State v. Scherf*, 192 Wn.2d 350, 387, 429 P.3d 776 (2018). ER 401 defines "[r]elevant evidence" as evidence with "any tendency to make the

13

existence of any fact that is of consequence to the determination of the action more probable or less probable." The trial court may admit "[e]ven minimally relevant evidence," *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002), but evidence is only relevant if "'a logical nexus exists between the evidence and the fact to be established,'" *State v. Briejer*, 172 Wn. App. 209, 226, 289 P.3d 698 (2012) (quoting *State v. Burkins*, 94 Wn. App. 677, 692, 973 P.2d 15 (1999)). Evidentiary error is harmless unless the defendant shows a reasonable probability that the error materially affected the outcome of the trial. *State v. Barry*, 183 Wn.2d 297, 317-18, 352 P.3d 161 (2015).

Clark claims the trial court erred in excluding evidence of his later court appearance because it was relevant to his knowledge of the appearance requirements. But the knowledge element of bail jumping is satisfied when proper notice is given. *Carver*, 122 Wn. App. at 306. We evaluate Clark's knowledge at the time the hearing date was set, and it is undisputed that Clark was informed of the omnibus hearing date at that time. Clark's subsequent efforts to comply with the court's orders were not relevant to a determination of his guilt on the bail jumping charge. Confusion, like forgetting, is not an affirmative defense. *See id.* There was not a logical nexus between Clark's proposed evidence and the fact sought to be proved, so the trial court did not abuse its discretion. *Briejer*, 172 Wn. App. at 226.

Even if there were evidentiary error, it was harmless. It is undisputed that Clark was notified of the May 15, 2018 hearing date, and it is undisputed that he failed to appear on that date. Clark cannot show a reasonable probability that the exclusion of the evidence of a subsequent appearance materially affected the outcome at trial.

### III. STATEMENT OF ADDITIONAL GROUNDS

Clark first informs the court that he was expecting his licensed caregiver to testify at trial and explain that due to Clark's challenges with posttraumatic stress disorder and long- and short-term memory, she was responsible for writing down his appointments and ensuring his attendance. Clark claims this testimony was absent from the trial due to the ineffective assistance of his counsel, and he argues that its absence violated his right to present a complete defense to the bail jumping charge.

We note that Clark's live-in caregiver did testify at trial, although not about how she assisted Clark. There is nothing in the record to explain why the caregiver did not testify about how she assisted Clark. Because the argument Clark raises in his SAG relies on evidence outside of the record, we cannot consider it. "If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Next, Clark makes several arguments related to the officers' handling of a safe they found when executing the search warrant at his residence. Clark challenges the admission of what he characterizes as a "clearly staged" photo of the safe, arguing his counsel was ineffective for permitting the photo's admission. SAG at 3. Clark also claims that officers "broke into this lock[ed] safe without a search warrant" and then left the safe open and accessible by others. *Id*.

Washington has adopted *Strickland v. Washington*'s two-pronged test for evaluating claims of ineffective assistance of counsel, which requires defendants to show both deficient performance by counsel and resulting prejudice. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017) (citing *Strickland*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Clark has failed

15

to articulate how his counsel's performance was deficient, and he does not show that prejudice resulted from the admission of this single photo.

Further, Clark has not shown a violation of his right to be free from warrantless searches on this record. Premises warrants authorize searches of "locked containers where the objects of the search are likely to be found." *State v. Witkowski*, 3 Wn. App. 2d 318, 328, 415 P.3d 639, *review denied*, 191 Wn.2d 1016 (2018). The affidavit in support of the warrant for Clark's residence encompassed controlled substances, drug paraphernalia, and cash, all of which can commonly be stored in safes. Before prying open the locked safe, officers asked Clark for the key, and Clark responded that he "couldn't remember where the key was." 1 VRP at 175. Clark has failed to show that the officers acted improperly by forcing open the safe.

Finally, any argument that the officers left Clark's safe open and vulnerable after completion of their search relies on evidence outside of the record. We cannot evaluate this claim. *See McFarland*, 127 Wn.2d at 335.

## CONCLUSION

We affirm Clark's convictions.

No. 53255-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Lee, C.J.

Sutton, J.

17